Jack McMANUS, individually and as personal representative of the Estate of Dorothy McManus, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 87–3160.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1988.
Decided Nov. 22, 1988.

Dennis J. Sieg, McManus Law Office, Oregon, Wis., for plaintiff-appellant.

Thomas R. Lamons, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before BAUER, Chief Judge, MANION, Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This is an appeal from the district court's order granting the defendant's motion for summary judgment against the plaintiff's action to recover income taxes and an interest penalty, 994 F.Supp. 700. We affirm.

## BACKGROUND

Jack McManus ("taxpayer") brought this action, under 28 U.S.C. § 1346(a)(1), seeking a refund of federal income taxes and interest penalty paid by him and his now deceased spouse for the years 1981–84. They claimed an investment tax credit ("ITC") and calculated five-year (accelerated) depreciation for a ten-unit airplane hangar they purchased in 1981 for $165,000. Following an audit, the IRS disallowed the ITC and determined that the hangar was subject to fifteen-year depreciation. McManus and his wife paid $40,516 in taxes owed plus $20,024 in interest.

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

The ten-unit airplane hangar is located at the Dane County Regional Airport (Truax Field) in Madison, Wisconsin, where it was assembled in less than two weeks. It was not a prefabricated structure. The taxpayer leased land for the hangar under a thirty-year lease requiring that the hangar only be used to store aircraft. Airport regulations also restrict hangars to this use. The hangar has an expected useful life of at least twenty years.

The taxpayer in turn leased the hangar to Frickelton Aviation which then rented units to individual airplane owners for their personal use. Frickelton Aviation operates out of the Dane County Regional Airport and, among other things, sells gas to airplane owners, repairs and inspects airplanes and gives flying instruction. The taxpayer did not keep his own airplane in the hangar. He is an attorney, part-time farmer and also owns a private airstrip in Oregon, Wisconsin. Owning and leasing the hangar is a totally independent business of the taxpayer.

The structure, which is rectangular, consists of a steel frame bolted in forty to sixty places to concrete footings or "piers" poured into the ground. It is also supported by turnbuckles, girders, trusses, tie bars and braces. The sides and roof are made of steel sheets which are bolted to the piers. There are ten separate concrete and asphalt floors, one for each of the ten hangar units, each three inches thick and covering less floor space than the entire floor area. There is dirt between the floors and the concrete piers.

There is no "rear wall" for each unit in the ordinary sense because five adjacent hangars abut the other five adjacent hangars with partitions between them. The partitions are bolted to the structure and can be removed. The individual units could be spread out in a line but are in fact situated adjacent to each other in order to save space and other costs, e.g., steel sheets, hardware, land and concrete piers. Each hangar unit occupies an area which is seventeen feet deep and forty feet wide and the entire hangar is thirty-four feet by two hundred feet.

A dispute arose during oral argument as to the number and nature of the partitions. The taxpayer's counsel claimed that where two units abut there are double walls, i.e., two partitions. He did not discuss the height of the partitions. The government responded that units which abut are separated by one partition which does not extend to the roof of the structure itself. According to the government, one could climb to the top of a partition and view the adjacent hangar. As discussed below, we do not consider this to be a material fact. It is undisputed that at each end of the structure there are thirty-four foot outside walls which extend to the height of the entire structure while the inside six units have partitions separating them. One roof covers the entire structure.

Each unit has a forty-foot folding door for aircraft access that can be purchased separately. Conventional manually operated doors for persons to enter and exit are incorporated into the larger airplane access doors. The hangars have no plumbing, heating, insulation, ventilation or windows. The electric system consists of a single lightbulb and a motor to open and shut the airplane access door. Each unit is designed to house one single-engine aircraft.

The hangar could be moved to another location. Duane Millard, a building contractor involved in the hangar's original assembly, stated that four men could disassemble the units and load them on a truck for a cost of $1,400 to $1,600. He said that a four-person crew would take two days to remove the ten forty-foot doors and five days to disassemble the remainder of the hangar. If the structure were moved a short distance, e.g., to another location at the same airport, it could be placed on a flatbed trailer or wheels and relocated without complete disassembly. Reassembling the structure would require less time than the original assembly. There was no evidence suggesting that the hangar had been moved since its original assembly.

The taxpayer notes in his reply brief that these time estimates are based on removal of the entire ten-unit structure. It would take less than one day to remove one unit

and, according to him, it is proper to analyze the tax issue in terms of a single unit. However, moving one or all ten hangar units would require construction of new cement piers with steel bolts and other support pieces, in addition to paving new floors. The old cement piers and bolts would also remain, unless removed. The government claims that, in any event, the hangar should be viewed as a whole. The district court analyzed this case in terms of one ten-unit structure. We agree.

## INVESTMENT TAX CREDIT ("ITC")

The taxpayer must prove that he is entitled to the ITC. *Illinois Cereal Mills, Inc. v. Comm'r of Internal Revenue,* 789 F.2d 1234, 1239 (7th Cir.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 600, 93 L.Ed.2d 600. Property eligible for an ITC is called section 38 property, defined in relevant part by 26 U.S.C. § 48 ("section 48")[1]:

(a) Section 38 property—

(1) In general.—Except as provided in this subsection, the term "section 38 property" means—

(A) tangible personal property (other than an air conditioning or heating unit), or

(B) other tangible property (not including a building and its structural components) but only if such property—

(i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services....

The district court concluded that, as a matter of law, the hangar is not "tangible personal property" or "other tangible property" but a building for which no ITC is available. In addition, the district court found that the doors and partitions are structural components of the hangar and, accordingly, are also not subject to an ITC.

Although both parties presented individual stipulations of facts and the district court accepted the taxpayer's stipulation as true for the purpose of the government's motion, he claims that there are non-stipulated material issues of fact in dispute, precluding summary judgment under Fed. R.Civ.P. 56(c), as to whether the hangar, doors and partitions qualified for an ITC and five-year depreciation. These include whether the property is inherently permanent, whether it is a building and whether it is readily adaptable to other uses. He argues that the structure itself qualifies for an ITC as either tangible personal property under section 48(a)(1)(A) or as other tangible property under section 48(a)(1)(B). The taxpayer also claims that even if he is not entitled to an ITC for the hangar as a whole, the doors and partitions are removable, can be sold separately and qualify for an ITC under section 48(a)(1)(B) as other tangible property.

The government argues that no material facts are in dispute and the property in question is an inherently permanent building as a matter of law which does not qualify for an ITC. In addition, the government claims that section 38 was intended to encourage investment in machinery and equipment (tangible personal property) and certain real property improvements (other tangible property), neither of which include hangars or their doors or partitions.

Both parties agree that whether or not the hangar, doors and partitions qualify for five-year depreciation as opposed to fifteen-year depreciation is dependent on whether they qualify for an ITC; any property which qualifies for an ITC qualifies for five-year depreciation. Any material issues of fact in dispute with respect to the ITC issue which would preclude summary judgment necessarily also relate to the depreciation issue.

## ANALYSIS

### Does The Hangar Qualify As Other Tangible Property?

■ For convenience, we begin with an analysis of section 48(a)(1)(B). Property

---

**1.** References are to the Internal Revenue Code of 1954. The Code was amended and redesignated the Internal Revenue Code of 1986 by Section 2 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, but the years in question preceded the 1986 Act. Interestingly, the Tax Reform Act of 1986 repeals the ITC, subject to certain transition rules.

which qualifies as "other tangible property" under section 48(a)(1)(B)(i) because it is "used as an integral part of ... furnishing transportation ..." must also be used "by a person engaged in the trade or business of furnishing any such service." Treas. Reg. § 1.48–1(d)(1).

The taxpayer is an attorney and a farmer by trade. He also owns an airstrip in Oregon, Wisconsin which he maintains for personal use. The hangar in question is unrelated to his Oregon, Wisconsin airstrip. In addition, the hangar units in question are leased to another company and then subleased to owners of private aircraft for housing their personal planes, rather than to businesses providing transportation services.

Even if we assume that the hangar is an "integral part of a transportation service," which does not appear to be the case, it is clear that the taxpayer is not engaged in the trade or business of furnishing transportation services. If any party in the taxpayer's arrangement is engaged in such service it is his lessee, Frickelton Aviation. The taxpayer, on the other hand, is merely a lessor of property to Frickelton Aviation which in turn leases portions of the property to individuals engaged in private airplane travel. Accordingly, the taxpayer's ownership and use of the hangar unit structure does not qualify for an ITC under section 48(a)(1)(B).

### Do The Doors And Partitions Qualify As Other Tangible Property?

■ The taxpayer argues that even if the hangar does not qualify for an ITC as other tangible property, the steel partitions and folding doors qualify. The district court rejected this argument, holding that the partitions and folding doors are "structural components" of the hangar, which it deemed to be a *building*, and thus do not qualify for an ITC. Treas.Reg. § 1.48–1(e)(2); *Illinois Cereal*, 789 F.2d at 1244.

The taxpayer argues that the partitions and doors are easily removable, the doors can be sold separately and the doors and partitions are not structural components as

a matter of law. If the doors and partitions are removed, the hangar will still have value. The taxpayer compares the doors and partitions to grocery counters and display racks which have qualified for ITCs. *Illinois Cereal*, 789 at 1240; Treas. Reg. § 1.48–1(c). That treasury regulation and the *Illinois Cereal* citation refer to property which qualified for an ITC as "tangible personal property" under section 48(a)(1)(A), not "other tangible property" under section 48(a)(1)(B). In addition, these references are not to structural components of real property.

The treasury regulations state that structural components include "such parts of a *building* as walls, *partitions*, floors, and ceilings, as well as any permanent coverings therefor such as paneling or tiling; windows and *doors;* ... and other components relating to the operation or maintenance of a building." Treas.Reg. § 1.48–1(e)(2) (emphasis added). The taxpayer refers to the hangar components as partitions and doors but claims that they do not provide "structure" for the hangar.

In *Minot Federal Savings & Loan Ass'n v. United States*, 435 F.2d 1368 (8th Cir. 1970), partitions in an office building qualified for an ITC as tangible personal property because they were easily removable, were intended to give tenants flexibility in designing their floor plan and were assembled with a few nails and screws which made nearly invisible holes. As such, they were not deemed to be structural components. 435 F.2d at 1368–69.

The Court of Appeals for the Eighth Circuit subsequently distinguished *Minot* in *Mallinckrodt, Inc. v. Comm'r of Internal Revenue*, 778 F.2d 402 (8th Cir.1985). There, a taxpayer sought an ITC for drywall partitions which extended from the floor to the height of a false ceiling, were not easily removed, were not intended to be moved about and would also be partially damaged if removed. These partitions were deemed to be structural components of the building. 778 F.2d at 403.

The partitions and doors in this case are distinct from those in *Minot* and more closely resemble those in *Mallinckrodt*.

The hangar units are used to protect airplanes from inclement weather and vandalism, i.e., to provide shelter and housing. They completely enclose the ten airplanes. Without the doors or partitions, both purposes would be greatly diminished. In addition, they function as walls and are bolted to the steel piers just the same as the other walls, although the partitions may not extend to the roof.

Simply stated, the doors and partitions add to the strength and operation of the structure. The intent is to maintain them in place at least so long as the hangar itself remains, rather than move them about to cater to individual airplane owners' tastes and needs. There was no evidence that partitions or doors have been moved or relocated. We agree with the district court that the doors and partitions are structural components.

■ Because the treasury regulations automatically exclude the doors and partitions from an ITC if the structure is a building, and the doors and partitions are structural components, the final question here is whether the hangar is a building as found by the district court. The treasury regulations define a section 48 building as

> any structure or edifice enclosing a space within its walls, and usually covered by a roof, the purpose of which is, for example, to provide shelter or housing or to provide working, office, parking, display, or sales space. The term includes, for example, structures such as apartment houses, factory and office buildings, warehouses, barns, garages, railway or bus stations, and stores.

Treas.Reg. § 1.48–1(e)(1). As noted above, the hangar structure protects airplanes from nature and unwanted visitors. It functions as a warehouse or garage, *see Illinois Cereal,* 789 F.2d at 1243 (accepting functionality test), and falls within the regulation's explicit examples and general definition of a building. Accordingly, the doors and partitions are structural components of a building and do not qualify for an ITC.

As a final attempt, the taxpayer claims that the hangar is specialized property not covered under the definition of a building in section 48. The term "building" does not include any

> structure which houses ITC property used as an integral part of any activity specified in section 48(a)(1)(B)(i) if the use of the structure is so closely related to the use of such property that the structure clearly can be expected to be replaced when the property it initially houses is replaced.

Treas.Reg. § 1.48–1(e)(1). The taxpayer seems to argue that if the hangar is not generally adaptable to other uses and the activity for which it is used qualifies under section 48(a)(1)(B)(i), then the hangar's components qualify.

This argument ignores the requirement under section 48(a)(1)(B)(i) that the taxpayer be personally engaged in the business of furnishing transportation services. We have already concluded that the taxpayer's property is not "used as an integral part of … furnishing transportation … by a person engaged in the trade or business of furnishing any such service." Treas.Reg. § 1.48–1(d). Likewise, based on the facts of this case, the airplanes housed in the structure would not constitute property qualifying under section 48. They are used for personal flights by individuals and are owned by the individuals, not the taxpayer. In addition, as noted above, the hangar is leased by the taxpayer to a company which in turn subleases the units. Accordingly, it does not matter whether or not the hangar structure is closely related to the airplanes; because of the nature of the taxpayer's activity, neither the hangar or its components qualify for an ITC under section 48(a)(1)(B).

The government notes that a visit to the hangar by counsel for both parties found one unit to be housing a truck, tires and boxes and another hangar unit sheltering an automobile, in addition to an airplane. Although housing airplanes is what a hangar unit is primarily intended for, it can obviously function as a garage or storage space for other things. Moreover, structures which have qualified under this exception are factually distinct from the

hangar in that they go hand in hand with the property housed. *See, e.g., Stuppy, Inc. v. United States,* 454 F.Supp. 1378 (W.D.Mo.1978) (specialty greenhouse); *Brown–Forman Distillers v. United States,* 499 F.2d 1263, 205 Ct.Cl. 402 (1974) (whiskey maturation facility); and *Central Citrus Co. v. Comm'r of Internal Revenue,* 58 T.C. 365 (1972) ("sweet rooms" used to ripen fruit).

In sum, neither the hangar nor the doors or partitions qualify for the ITC as "other tangible property" under section 48(a)(1)(B). We turn now to section 48(a)(1)(A).

### Does The Hangar Qualify As Tangible Personal Property?

Whether or not property qualifies as "tangible personal property" under section 48(a)(1)(A) depends on whether the property is an "inherently permanent structure." *Illinois Cereal,* 789 F.2d at 1236. Tangible personal property does not qualify for the ITC if it is "land and improvements thereto, such as *buildings or other inherently permanent structures* (including any items which are structural components of such buildings or structures)." Treas.Reg. § 1.48–1(c) (emphasis added). In contrast, tangible personal property includes "production machinery, printing presses, transportation and office equipment, refrigerators, grocery counters, testing equipment, display racks and shelves, and neon and other signs, which is contained in or attached to a building...." *Ibid.*

We have already concluded that the hangar structure is a building as defined under section 48(a)(1)(B). There is no contrary definition for a "building" under section 48(a)(1)(A). However, the taxpayer argues that the structure only looks like a building and can still qualify for an ITC if it is not "inherently permanent." Brief of Plaintiff–Appellant at 11–12 *citing Moore v. Comm'r of Internal Revenue,* 489 F.2d 285 (5th Cir.1973), *aff'g* 58 T.C. 1045 (1972) (mobile homes are tangible personal property but did not qualify for ITC in this case because they were primarily used for lodging by non-transients, *see* section 48(a)(3));

*Film N' Photos, Inc. v. Comm'r,* 37 T.C.M. (CCH) 709 (1978) [available on WESTLAW, 1978 WL 2857] (outdoor prefabricated photo hut); *Brown & Williamson Tobacco Corp. v. United States,* 369 F.Supp. 1283 (W.D.Ky.1973) (tobacco sheds), *aff'd* 491 F.2d 1258 (6th Cir.1974); *Satrum v. Comm'r,* 62 T.C. 413 (1974); and *Endres Floral Co. v. United States,* 450 F.Supp. 16 (N.D.Ohio 1977).

■ The taxpayer incorrectly implies that the test of whether property is inherently permanent is in addition to the test of whether the property is a building. Basic laws of statutory construction lead to the conclusion that Treas.Reg. § 1.48–1(c) excludes tangible personal property from an ITC if the property is a building and there is no additional requirement that the structure be found to be inherently permanent. The regulation specifically excludes from an ITC "buildings or other inherently permanent structures." Logically, for the purposes of section 48, buildings are inherently permanent structures but not all inherently permanent structures are buildings. The initial inquiry is whether a structure is a building as defined by the Code and regulations. We have already concluded that the hangar is a building.

The following properties were found to be not inherently permanent under section 48(a)(1)(A): outdoor advertising signs, *Southland Corp. v. United States,* 611 F.2d 348, 222 Ct.Cl. 22 (1979); removable air conditioning and heating units, *Kramertown Co. v. Comm'r of Internal Revenue,* 488 F.2d 728 (5th Cir.1974); mobile homes with wheels which were placed on unsecured concrete blocks, *Moore, supra;* and outdoor prefabricated photo huts removable within one hour, *Film N' Photos, supra. See also* cases cited in *Illinois Cereal,* 789 F.2d at 1236, n. 1. None of these structures were found to be buildings.

The taxpayer claims that whether the hangar is inherently permanent is a question for the trier of fact. The district court held based on undisputed facts that the hangar is a building and, in any event, an inherently permanent structure. We

agree. As noted several times above, the structure is clearly one building with ten separate storage units. Our inquiry can thus stop. However, a further analysis demonstrates that the structure is also in fact inherently permanent.

■ The following six-part test has been developed to determine whether property is inherently permanent:

1. Is the property capable of being moved and has it in fact been moved? . . .

2. Is the property designed or constructed to remain permanently in place? . . .

3. [A]re there circumstances that show that the property may or will have to be moved? . . .

4. How substantial a job is removal of the property and how time-consuming is it? . . .

5. How much damage will the property sustain upon removal? . . .

6. What is the manner of affixation of the property to the land? . . .

*Whiteco Industries, Inc. v. Comm'r of Internal Revenue*, 65 T.C. 664, 672–73 (1975) (citations omitted) (outdoor advertising signs qualified as tangible personal property).

It is undisputed that the hangar can be moved, although it has not been. However, many buildings can be moved. Although the hangar can be moved without complete disassembly, that could only be to another location at the airport, hardly a move connoting a lack of permanence.

The taxpayer claims that the hangar is not designed or constructed to remain permanently in place because the parts are bolted together as opposed to being welded and set in concrete. Mr. Millard stated that a four-person crew could remove the doors in two days and disassemble the hangar in five days for a small cost. There is no evidence suggesting that the hangar would be damaged when removed.

As noted above, however, any relocation would require reconstruction of cement piers with steel bolts and repaving of concrete and asphalt floors, in addition to the reconstruction of the structure itself (assuming the relocation is not to another location at the same airport). Such reconstruction would involve assembly of beams, girders, trusses, tie bars, braces, walls and doors.

The taxpayer also stresses that the hangar will have to be moved because his lease is limited. However, the lease is for thirty years, hardly a short period, and may exceed the estimated useful life of the structure (at least twenty years). There is no evidence that during the lease period the hangar will have to be moved and there is no evidence that the lease could not be renewed thereafter. Moreover, given its estimated useful life, the hangar will probably never be moved but will be demolished at the end of the lease if not before.

In sum, we agree with the district court that, even if the hangar is not a building, it is inherently permanent. Accordingly, it does not qualify for an ITC as tangible personal property under section 48(a)(1)(A).

### Are The Doors And Partitions Tangible Personal Property?

■ As noted above, we also agree with the district court that the doors and partitions are structural components of the hangar. Having found that the hangar does not qualify for an ITC as tangible personal property, the structural components also do not qualify for an ITC under section 48(a)(1)(A).

### Five–Year Depreciation

■ The parties and the district court agree that whether or not the hangar, doors and partitions qualify for five-year depreciation is dependent on whether they qualify for an ITC. *See* 26 U.S.C. § 1245(a)(3), and 26 U.S.C. § 168(c)(2) (1982). The hangar, doors and partitions do not qualify for an ITC under section 48(a)(1)(A) or (B). Accordingly, the property must be depreciated on a fifteen-year basis.

### CONCLUSION

Based on the previous analysis, we conclude that the hangar does not qualify for

an investment tax credit as either "tangible personal property" under 26 U.S.C. § 48(a)(1)(A) or as "other tangible property" under 26 U.S.C. § 48(a)(1)(B). In addition, the hangar's doors and partitions are structural components and do not qualify for an ITC under either section. The ITC is intended "to increase economic productivity, output, and growth by creating a tax incentive for the purchase of machinery, equipment, and other property used to produce goods and run a business." *Illinois Cereal,* 789 F.2d at 1236 (citations omitted). Congress' intent was not to extend the ITC to structures like the hangar involved in this case. Finally, the hangar, doors and partitions do not qualify for five-year (accelerated) depreciation. Accordingly, the opinion of the district court is

AFFIRMED.