**PIGGLY WIGGLY SOUTHERN, INC.,
Southern Graphic Art and Georgia
Sales Company, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellant.**

No. 86–8004.

United States Court of Appeals,
Eleventh Circuit.

Nov. 13, 1986.

Roger M. Olsen, Asst. Atty. Gen., Dept. of Justice, Tax Div., Michael L. Paup, Chief, Appellate Section, William A. Whitledge, Jonathan Cohen, Washington, D.C., for respondent-appellant.

Charles T. Zink, Atlanta, Ga., for petitioners-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

## CORRECTED OPINION

KRAVITCH, Circuit Judge:

In this case we must decide whether supermarkets that install heating, ventilating, and air conditioning (HVAC) units to meet temperature or humidity requirements essential for the operation of other machinery, may qualify for an investment tax credit under I.R.C. § 38. We affirm the tax court's decision that the taxpayer here qualified for the credit because the sole justification for installation of the HVAC units was to meet requirements of other machinery.

The tax court's findings of fact, 84 T.C. 739, show that appellee Piggly Wiggly Southern, Inc. (Piggly Wiggly) is a Georgia corporation engaged in the business of owning and operating retail food stores.[1]

---

1. Appellees Southern Graphic Arts and Georgia Sales Company are wholly-owned subsidiaries of Piggly Wiggly. The subsidiary-appellees are parties to this proceeding solely by virtue of having filed consolidated tax returns with the parent corporation.

In the late 1970's, Piggly Wiggly installed large, open-front refrigerated food cases in several of its stores.[2] These cases were designed for use in stores with operating ambient limits of 75° fahrenheit and 55% relative humidity.[3] Some of the cases also had minimum operating specifications of 65° fahrenheit and 35% relative humidity. If the temperature or humidity levels were exceeded, food spoilage would result.[4]

In 1977 and 1979, Piggly Wiggly purchased and installed HVAC units along with necessary ductwork and vents in several of its stores. Piggly Wiggly claimed investment tax credits for these units on its corporate income tax returns for fiscal years 1977 and 1979. The commissioner disallowed the credits and determined deficiencies of $82,057.00 for 1977 and $1,271.56 for 1979. Piggly Wiggly petitioned the United States Tax Court for a redetermination of the proposed deficiencies.

After trial,[5] the tax court concluded that the HVAC units did qualify as section 38 property. The court reasoned that, in order to qualify as section 38 property, the HVAC units must be tangible personal property pursuant to I.R.C. § 48(a)(1)(A).[6] Under Treas.Reg. § 1.48–1(c),[7] structural components of buildings are not tangible personal property.[8] Regulation section 1.48–1(e)(2) defines "structural components":

> The term "structural components" includes ... all components (whether in, on, or adjacent to the building) of a central air conditioning or heating system, including motors, compressors, pipes and

---

**2.** The tax court determined that the open-front cases were a necessity for Piggly Wiggly's stores because Piggly Wiggly depends upon high volume sales.

**3.** The tax court found that no open-front cases were available without these environmental requirements.

**4.** The tax court found that without proper air conditioning, the coils in the open-front cases ice over and the cases malfunction within a short period of time. If the temperature or humidity were to drop below minimum levels, the time necessary to defrost the units would be excessive.

**5.** The trial included the issue of whether new equipment Piggly Wiggly purchased for its stores had been "placed in service," see Treas. Reg. § 1.167(a)–11(e)(1)(i), in 1977 and 1979. The court's determination on that issue has not been appealed by either party.

**6.** I.R.C. § 48(a)(1)(A) states that the term "section 38 property" includes "tangible personal property (other than an air conditioning or heating unit)." The exclusionary language in § 48(a)(1)(A) applies to property placed in service after September 30, 1978. The tax court determined that the HVAC units Piggly Wiggly placed in service in 1979 were not excluded from "tangible personal property" because the exclusion in § 48(a)(1)(A) for air conditioning or heating units applies only to *portable* units. The commissioner does not contest this holding on appeal. He concedes that if the HVAC units meet the "sole justification" test, § 48(a)(1)(A) does not disqualify the units purchased in 1979 from receiving the credit.

Piggly Wiggly does not appeal the tax court's holding regarding appellee's contention that the HVAC units qualified for the credit under I.R.C. § 48(a)(1)(B)(i) because Piggly Wiggly stores prepare meat for retail sales. Section 48(a)(1)(B)(i) provides that "other tangible property (not including a building and its structural components)" qualifies as § 38 property if the property "is used as an integral part of manufacturing, production, or extraction...." The court concluded that the meat prepared in Piggly Wiggly's stores was "incidental" to Piggly Wiggly's retail supermarketing activities, and not among the activities encompassed by § 48(a)(1)(B)(i).

**7.** Treas.Reg. § 1.48–1(c) provides in part:
Tangible personal property includes all property (other than structural components) which is contained in or attached to a building.... Further, all property which is in the nature of machinery (other than structural components of a building or other inherently permanent structure) shall be considered tangible personal property even though located outside a building.

**8.** Because we find no reversible error in the tax court's conclusion that the "sole justification" test is met in this case, we do not reach the issue of whether, absent the "sole justification" exception, Piggly Wiggly's HVAC units constituted structural components. *See Kramertown Company v. Commissioner of Internal Revenue*, 488 F.2d 728 (5th Cir.1974) (weight, location, and capacity of rooftop air conditioning and heating units are all indications of reasonableness of classifying as structural components).

ducts.... However, the term "structural components" does not include machinery *the sole justification for the installation of which is the fact that such machinery is required to meet temperature or humidity requirements which are essential for the operation of other machinery* or the processing of materials or foodstuffs. *Machinery may meet the "sole justification" test provided by the preceding sentence even though it incidentally provides for the comfort of employees, or serves, to an insubstantial degree, areas where such temperature or humidity requirements are not essential.* For example, an air conditioning and humidification system installed in a textile plant in order to maintain the temperature or humidity within a narrow optimum range which is critical in processing particular types of yarn or cloth is not included within the term "structural components."

(emphasis added).

The tax court found that the "sole justification" test was met in this case. First, the court noted previous tax court decisions holding that Treas.Reg. § 1.48–1(e)(2) has the full force and effect of law because it is an accurate interpretation of Congressional intent with respect to the treatment of heating and air conditioning equipment.

Second, the court found that the evidence presented by Piggly Wiggly clearly established that the sole justification for installing the HVAC units was the necessity to meet the temperature and humidity requirements of other equipment in the stores.[9] Finally, the court assigned little weight to the evidence presented by the commissioner attempting to show that the HVAC units were installed primarily for customer and worker comfort.[10] The court found that the effect of the HVAC units on customers and employees was a collateral benefit, incidental to the maintenance of proper environmental conditions for the operation of the refrigeration equipment.

On appeal, the commissioner contends that the tax court applied the wrong legal standard to the facts of this case. The commissioner does not dispute that the regulation at issue is binding upon the court.[11] Instead, he argues that we should apply the test adopted by the Fourth Circuit in *A.C. Monk & Company v. United States*, 686 F.2d 1058 (4th Cir.1982), for determining whether electrical wiring is a structural component of a building. In *Monk*, the court determined that if wiring and other components of a building's electrical system could reasonably be adapted to other operations, they are structural components

9. In reaching this conclusion, the court apparently relied upon: specification sheets for the refrigeration equipment; a pamphlet published by the Food Marketing Institute; the fact that the Department of Energy had granted an exemption from thermostat regulations for supermarkets maintaining open-front refrigeration equipment; and the testimony of Benny Smith, refrigeration and energy systems manager at Piggly Wiggly.

10. The commissioner relied upon the report and testimony of Dennis Nonaka, an evaluation engineer with the Internal Revenue Service. The tax court discredited his testimony:

Nonaka had no experience in refrigeration or the food store industry. His report relies heavily on a speech given by a refrigeration company official dealing in general terms with the entire retail supermarket industry. From these generalities, Nonaka concludes that petitioner's HVAC units were installed for worker and customer comfort, and not to meet the needs of the equipment. Nonaka's report errs in its failure to look at facts relating to petitioner's specific situation.... Because Nonaka had no experience with the food store industry and because his short report contains errors and generalizations, we afford it little evidentiary weight.

11. In its applicable form, § 38(b) provided that "[t]he Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section." Our predecessor court, in *Kramertown Company v. Commissioner of Internal Revenue*, 488 F.2d 728 (5th Cir.1974), stated that "[r]egulations issued pursuant to the express statutory authorization in Section 38(b) are legislative in character and as binding upon a court as a statute if they are (a) within the granted power (b) issued pursuant to proper procedure and (c) reasonable." *Id.* at 730. The court quoted statements from Congress that Treas.Reg. § 1.48–1(e)(2) is "an accurate interpretation of the intention of Congress." The commissioner does not challenge the binding effect of the regulation in this case.

of the building and are ineligible for a section 38 credit. The commissioner urges us to extend the *Monk* test to the context of the "sole justification" exception and conclude that the HVAC units are structural components because any other alternative user of the supermarket buildings could make use of the HVAC units.

Irrespective of the merits of the "adaptable to other operations" test in the general context of determining whether something is a structural component of a building,[12] we find the test inappropriate in this case in light of the specific "sole justification" exception. Applying the "adaptable to other operations" test in this case would virtually read the "sole justification" test out of the regulation: almost any heating and air conditioning system installed in a building could reasonably be adapted for use by subsequent occupants. Nevertheless, the regulation comprehends that when such machinery is installed solely to meet temperature and humidity requirements essential to the operation of other equipment, the HVAC machinery will not constitute structural components of the building irrespective of some incidental employee comfort benefits.[13] We decline to give the express "sole justification" exception a construction that renders it applicable only to heating, air conditioning, and humidification equipment that cannot reasonably be adapted to maintain an environment suitable for human habitation.

In his second objection to the tax court's interpretation of the "sole justification" exception, the commissioner has restated, in the guise of a question of law, the arguments that the tax court rejected in making its factual determinations. The commissioner argues that the tax court misapplied the "sole justification" test; that *sole* justi-

fication means *exclusive* justification and refrigeration equipment requirements could not have been the exclusive justification because Piggly Wiggly needed some type of HVAC equipment for customer and worker comfort in order to remain competitive. Moreover, despite evidence that the HVAC system was installed to maintain the store environment within the refrigeration equipment specifications, according to the commissioner the tax court "stood the regulation on its head" by concluding from this that the equipment needs were the sole justification for installing the HVAC units because the refrigeration equipment itself was designed to operate at the most common human comfort levels.

The commissioner's alleged error of law presupposes a factual finding contrary to that made by the tax court. Although the commissioner insists that he does not contest the tax court's factual findings, the tax court found as a matter of fact that Piggly Wiggly chose the particular HVAC system in order to meet equipment specifications and that customer and worker comfort was an incidental benefit. The tax court's alleged misunderstanding of the sole justification test is really nothing more than the commissioner's complaint about the tax court's balancing of the "sole justification" versus "incidental benefits." As the court stated, however, "[i]t is bootstrapping to argue ... that where a collateral benefit necessarily follows an action, that the collateral benefit belies another basis as the justification for the action."

We find that the tax court's assessment of Piggly Wiggly's justification for installing HVAC units does not evince a misunderstanding of regulation section 1.48–1(e)(2) or Congressional intent in enacting

12. *See Illinois Cereal Mills, Inc. v. Commissioner of Internal Revenue,* 789 F.2d 1234 (7th Cir. 1986) (questioning *Monk* in the context of an electrical distribution center).

13. Our conclusion is bolstered by the example in the regulation. This example states that: "an air conditioning and humidification system installed in a textile plant in order to maintain the temperature or humidity within a narrow optimum range which is critical in processing par-

ticular types of yarn or cloth is not included within the term 'structural components'." Although the air conditioning and humidification system in this example undoubtedly could be "reasonably adapted in the present building to more general uses," *Monk,* 686 F.2d at 1066, and therefore a structural component under the *Monk* test, the example itself indicates a contrary result.

section 38. The "sole justification" test necessarily involves a factual determination as to why the taxpayer made particular expenditures. We cannot say as a matter of law that a supermarket's sole justification for installing a particular HVAC system could not have been to meet temperature and humidity needs of other equipment.

██ With respect to the merits of the commissioner's objections to the tax court's factual determination in this case, we find no basis for reversal. Review of tax court factual determinations is governed by the "clearly erroneous" standard of Fed.R. Civ.P. 52(a). *Estate of Broadhead v. Commissioner of Internal Revenue*, 391 F.2d 841 (5th Cir.1968).[14] Under this standard, where there are two permissible views of the evidence, the tax court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The tax court's finding regarding Piggly Wiggly's motive for installing the HVAC units in this case is entitled to even greater deference because it was based in large part upon assessments of the credibility of the principle expert witnesses.[15] *Id.* Furthermore, substantial additional evidence supported the tax court's conclusion.[16] Viewing the entire evidence, therefore, we are not left with the definite and firm conviction that a mistake has been committed.

Finding no error of law and no clear error in factual findings, we AFFIRM the decision of the tax court.

14. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

15. The court described Piggly Wiggly's expert witness as a "forthright, knowledgeable and credible witness." By contrast, the court found that the testimony and report of the commissioner's expert witness, Dennis Nonaka, a valuation engineer with the IRS, was entitled to less weight. The court described the report as "brief" and the expert as having little experience in this area: "A valuation engineer renders technical advice on depreciation, investment credit and allocation of purchase price issues. Nona-

ka did not have a degree in engineering and had no experience in refrigeration or in the food store industry." *See also supra* note 10.

16. In addition to the evidence regarding the environmental requirements of the open-front refrigerator cases discussed above, Piggly Wiggly presented evidence that: (1) it would have installed a different heating and cooling system but for the needs of the refrigeration equipment; (2) the temperature and humidity levels which Piggly Wiggly had to maintain for equipment needs were not optimal for human comfort; (3) the HVAC units ran twenty-four hours a day, even when the store was closed, in order to maintain the proper environment for the refrigeration equipment.