GORDON H. AND SANDRA S. WILKISON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilkison v. Commissioner
Docket No. 12381-86.
United States Tax Court
T.C. Memo 1988-386; 1988 Tax Ct. Memo LEXIS 417; 55 T.C.M. (CCH) 1635; T.C.M. (RIA) 88386; August 17, 1988. Grover Cunningham, for the petitioners. Elena Diaz, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: *418 Year
Deficiency
1982
$ 6,205
1983
3,236
After a concession by petitioners, the issues for decision are (1) whether certain motion picture processing equipment was placed in service by petitioner during 1982, and, if so, (2) whether petitioners' accelerated cost recovery system (ACRS) deduction in that year is limited by section 168(f)(5). [1]
FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Gordon Wilkison (petitioner) and Sandra Wilkison resided in Texas when their petition was filed. Prior to August 25, 1982, petitioner was the general manager of a photographic processing business owned by L.B.J., Inc. (L.B.J.). In Early 1982, L.B.J. decided to sell the photographic processing business. Petitioner learned of L.B.J.'s decision in late spring or early summer. He then offered to purchase the motion picture processing side of the business (the business) from his employer. Petitioner did not know that L. *419 B.J. had agreed to sell the business to Photo Processors, Inc. (Photo Processors), a corporation owned by Danny Pounds (Pounds). By August 25, 1982, L.B.J. had sold the business to Photo Processors. Petitioner no longer worked for L.B.J. and had begun to negotiate with Pounds. On August 25, 1982, in anticipation of petitioner's purchase of the business, petitioner and Photo Processors entered into a Sublease Agreement for the business premises, the term of which was to commence January 1, 1983. As negotiations continued throughout the fall of 1982, petitioner continued to manage all aspects of the motion picture processing business. Petitioner worked without compensation; he was not an employee of L.B.J., Photo Processors, or Pounds. Petitioner worked without pay because, in anticipation of his impending purchase of the business, he wanted to retain customers and long-term employees. He did not become an employee of Photo Processors because he did not want to complicate his negotiations with Pounds. At or about noon on December 31, 1982, petitioner and Photo Processors entered into an Assets Purchase Agreement (the Agreement) whereby petitioner acquired the assets of the business. *420 Paragraph 3 of the Agreement provided as follows: 3. Receivables. Buyer and Seller agree that all work in process completed by the close of business December 31, 1982, shall be for the account of Seller and all work completed thereafter shall be for the account of Buyer. * * * Pursuant to the Sublease Agreement, petitioner's right to occupy the business premises began on January 1, 1983. Employees of the business remained on the payroll of Photo Processors for a few days into January, until petitioner's bookkeeping system was established. After the employees were transferred to petitioner's payroll, petitioner reimbursed Photo Processors for wages paid to the employees. At some point in 1983, petitioner transferred the equipment acquired from Photo Processors to Cinetex Film Labs, Inc. (Cinetex), a subchapter S corporation wholly owned by petitioners. On their 1982 tax return, petitioners claimed a 15 percent first year ACRS deduction for the equipment. On their 1983 tax return, petitioners deducted their distributive shares of a Cinetex loss attributable to its 22 percent second year ACRS deduction for the equipment. In a notice of deficiency, respondent disallowed *421 petitioners' 1982 ACRS deduction. As a result of respondent's determination that Cinetex was entitled to a 15-percent first year ACRS deduction in 1983, petitioners' 1983 Cinetex loss deduction was disallowed in its entirety. OPINION An asset is eligible for ACRS depreciation when it is "placed in service." Section 168(d)(1)(B)(i). Although the phrase "placed in service" is not defined in the statute, section 1.168-2(1)(2), Proposed Income Tax Regs., 49 Fed. Reg. 5956 (Feb. 16, 1984), states: (2) Placed in service. The term "placed in service" means the time that property is first placed by the taxpayer in a condition or state of readiness and availability for a specifically assigned function, whether for use in a trade or business, for the production of income, in a tax-exempt activity, or in a personal activity. * * *
Although proposed regulations "carry no more weight than a position advanced on brief by the respondent," F. W. Woolworth Co. v. Commissioner,54 T.C. 1233, 1265-1266 (1970), this definition is identical to that used for purposes *422 of asset depreciation under section 167 and for investment credits under section 46. See sections 1.167(a)-11(e)(1)(i) and 1.46-3(d)(1)(ii), Income Tax Regs. It is thus a reasonable construction for purposes of this case. Assets may be "placed in service" when not yet in actual use but in a state of readiness and available for a specifically assigned function in an operating trade or business. Piggly Wiggly Southern, Inc. v. Commissioner,84 T.C. 739, 746 (1985), affd. 803 F.2d 1572 (11th Cir. 1986). Respondent argues that petitioner may not rely on this so-called "idle asset" rule, discussed at length in Piggly Wiggly, and we agree. In Piggly Wiggly we reviewed several cases in which the "placed in service requirement" was met for assets not yet in actual use but available in a state of readiness for use in an operating trade or business. See Schrader v. Commissioner,582 F.2d 1374 (6th Cir. 1978), affg. a Memorandum Opinion of this Court; Sears Oil Co. v. Commissioner,359 F.2d 191 (2d Cir. 1966), revg. on *423 this issue a Memorandum Opinion of this Court; SCM Corp. v.United States, an unreported case ( E.D. Tenn. 1980, 46 AFTR 2d 80-5927, 80-2 USTC par. 9642), affd. per curiam 675 F.2d 113 (6th Cir. 1982). We identified two factors significant to the result in these cases: (1) The taxpayers were already engaged in the business for which the equipment had been purchased; and (2) the taxpayers had done all that was in their power to place the equipment into service. We conclude that petitioner failed to satisfy the first criterion set forth in Piggly Wiggly, because he was not engaged in the trade or business of motion picture processing on or before December 31, 1982. Petitioner's involvement with the business in 1982 was no more than substantial "pre-opening" activity. See Richmond Television Corp. v. United States,345 F.2d 901, 907 (4th Cir. 1965), remanded on another issue 382 U.S. 68 (1965). Petitioner did not have the right to occupy the leased premises until January 1, 1983, and although the Agreement provided that work in process not completed in 1982 would be for petitioner's account, petitioner failed *424 to prove that any such work existed. His testimony on that subject was limited to conjecture, which he admitted was not supported by any specific record or recollection. Having held that the equipment was not "placed in service" in 1982, we need not address the second issue presented for decision. See, however, Greene v. Commissioner,T.C. Memo. 1988-331. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue. ↩