WILLIAM C. LEWIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lewis v. Comm'r
Docket No. 2313-88
United States Tax Court
T.C. Memo 1989-78; 1989 Tax Ct. Memo LEXIS 82; 56 T.C.M. (CCH) 1328; T.C.M. (RIA) 89078; February 27, 1989; As amended February 27, 1989 *82 William C. Lewis, pro se. James W. Ruger, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 9,119 in petitioner's Federal income tax for 1985. After concessions, the issues remaining for decision are (1) whether petitioner is entitled to a $ 33,092 loss on the sale of farm property; (2) whether petitioner is entitled to a $ 27,074.20 loss from farm operations; and (3) whether petitioner is entitled to a $ 2,784.90 rental loss. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. William C. Lewis (petitioner) resided in Sabina, Ohio, when he filed the petition in this case. On January 14, 1983, petitioner filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Southern District of Ohio, Western Division. One of petitioner's creditors in this bankruptcy proceedings was The Travelers Insurance Company (Travelers), that held the mortgage on his farm. Petitioner's filing of a Chapter 11 petition automatically stayed an action that Travelers had previously initiated *83 in the United States District Court for the Southern District of Ohio to obtain a judgment on a promissory note and to foreclose on a mortgage held on petitioner's farm. Travelers filed a motion to lift this automatic stay. On February 6, 1984, petitioner and Travelers entered into a settlement agreement in which petitioner agreed to make certain payments to Travelers and Travelers agreed to abstain from taking action on the promissory note and mortgage. This settlement agreement was field with the United States Bankruptcy Court and incorporated by reference into a Judgment Entry and Order that granted conditional relief from the automatic stay and permitted Travelers to continue its action against petitioner. At the same time, the parties executed a Consent Judgment Entry permitting Travelers to continue seeking judgment on the promissory note and foreclosure of the mortgage in the event petitioner defaulted on the payments set forth in the settlement agreement. The Consent Judgment Entry stated that petitioner was indebted to Travelers in the amount of $ 840,100 plus accured interest, and further stated that Travelers "upon its voluntary waiver, and for good consideration, shall *84 have no judgment as to any deficiency balance against William C. Lewis * * * which may result from the sale of the premises for an amount less than the amount then due to * * * [Travelers] at such date of sale." In 1985, petitioner defaulted on his payments due to Travelers under the settlement agreement, and Travelers filed the Consent Judgment Entry on April 8, 1985. Petitioner filed a motion for continuance with the United States District Court in an attempt to prevent the lifting of the automatic stay. In a decision overruling petitioner's motion for continuance, the district court held that it did not have the power to modify a written contract agreed to during an arm's-length transaction between the creditor and the debtor. Pursuant to an order of sale, petitioner's farm was sold October 15, 1985, by the United States Marshal for the Southern District of Ohio. Travelers was the highest bidder at the sale and purchased the farm for $ 496,000. At the time of the foreclosure sale, petitioner was indebted to Travelers in the amount of $ 941,520. On his 1985 tax return, petitioner claimed a loss of $ 33,092 from the sale of his farm. In his notice of deficiency, respondent disallowed *85 the loss in full, and determined that the amount of discharged indebtedness must be used to reduce petitioner's capital losses and the basis of his other assets. Petitioner also claimed a net loss of $ 27,074.20 from farm operations and a rental loss of $ 2,784.90 on his 1985 tax return. (Although respondent initially disallowed these losses in full, he had agreed to concede $ 22,053.20 of the loss from farm operations and $ 2,233.90 of the rental loss.) The amounts claimed by petitioner on his 1985 return and still at issue are as follows: Farm Loss
Telephone expense
$ 1,678
Home office expense
1,823
Maintenance-motor home
968
Depreciation-motor home
552
Total
$ 5,021
Rental Loss
Home office expense
$   551
During 1985 petitioner made in excess of 150 long distance telephone calls to his sister totaling $ 2,142.83. In 1985, petitioner's sister was a retired U.S. Air Force employee with a background as a cost accountant and budget analyst. Petitioner's sister had been raised on a farm. During this telephone calls, petitioner discussed his farm and rental operations with his sister. Petitioner's sister gave him financial and business advice regarding his continuing financial and legal difficulties. *86 Although petitioner had been represented by an attorney during part of the period in issue, petitioner's attorney was not a financial advisor and declined to provide petitioner with financial advise or assistance. Petitioner's attorney withdrew as counsel in the bankruptcy case on September 5, 1985. In addition to financial and business advice, petitioner received two loans from his sister during 1985. (Respondent has conceded that the long distance calls from petitioner to his sister during the periods of these loans, February 18 to 25, 1985, and October 7 to 14, 1985, constitute ordinary and necessary business expenses. Petitioner's long distance telephone calls to his sister during these two weeks totaled $ 156.95.) During 1985, petitioner used a portion of his personal residence at 109 North College Street, Sabina, Ohio, as an office in connection with his farming and rental operations. Petitioner used approximately one-quarter of his house in his business: portions of the dining room, kitchen, and two spare bedrooms. Petitioner deducted $ 1,823 as a farm expense and $ 551 as a rental expense for the use of his home office in 1985. In prior years, petitioner had used a motor *87 home in his farming operations. on his prior years' tax returns, petitioner deducted expenses and depreciation relating to the motor home based on 68.8 percent business use of the motor home. During 1984, the motor home was extensively damaged by vandals while stored at a repair shop, George Byers and Sons (Byers), Columbus, Ohio. Because of the likelihood that Byers had been negligent, petitioner's insurer refused to take responsibility for the cost of repairs of the motor home. Petitioner lost the sight in his right eye in July 1985, and was away from his work for a prolonged period of time. Subsequently in 1986, petitioner filed suit against Byers and made arrangements to have the motor home restored. In September 1987, petitioner settled his claim against Byers for $ 3,500. During the time that petitioner was seeking recovery for the damages to the motor home, petitioner had continuing financial difficulties and was unable to afford the cost of repairs. Although the motor home was inoperable during 1985, petitioner incurred and paid interest, insurance, and storage and license fees. On his 1985 tax return, petitioner deducted 68.8 percent of the 1985 expenses and depreciation *88 relating to the motor home based on prior years' allocations. OPINION Petitioner has the burden of proving that he is entitled to the deductions that he claimed. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure.
Loss of Sale of Farm
On his 1985 tax return, petitioner claimed a loss on the sale of farm property of $ 33,092. Respondent disallowed this loss in full and determined that petitioner must reduce his basis in other real and personal property to zero as of December 31, 1985. In United States v. Kirby Lumber Co.,284 U.S. 1 (1931), the Supreme Court announced the general rule that gross income includes income from the discharge of indebtedness. Section 61(a) [1] provides that gross income means gross income from whatever source derived. Section 61(a)(12) specifically provides that gross income includes income from the discharge of indebtedness.
Section 108(a)(1) provides an exclusion for discharge of indebtedness income if (A) the discharge occurs in a title 11 case, (B) the discharge *89 occurs when the taxpayer is insolvent, or (C) the indebtedness discharged is qualified business indebtedness. Section 108(d)(2) defines the term "title 11 case" as "a case under title 11 of the United States Code (relating to bankruptcy), but only if the taxpayer is under the jurisdiction of the court in such case and the discharge of indebtedness is granted by the court or is pursuant to a plan approved by the court." Section 108(b) further provides that the amount excluded from gross income under section 108(a)(1) must be applied to reduce certain tax attributes of the taxpayer, including capital losses and the basis of property owned by the taxpayer. A foreclosure sale is a "sale of exchange" for purposes of Federal income taxation. R. O'Dell & Sons Co. v. Commissioner,8 T.C. 1165 (1947), affd. 169 F.2d 247, 248 (3d Cir. 1948). A foreclosure sale, like a voluntary sale, is a definitive event that establishes gain or loss. The gain or loss is recognized "in the year in which the property is disposed of and the debt discharged." (Emphasis added.) R. O'Dell & Sons Co. v. Commissioner,8 T.C. at 1167. Normally, if an owner sells property for more than its basis, there will be a *90 taxable gain even where the consideration received is the release of indebtedness rather than cash. In this case, petitioner obtained the tax advantages of section 108, which allowed him to exclude gain which would otherwise be taxable. Disregarding the bankruptcy proceeding, the foreclosure sale would have resulted in income of $ 445,520 -- the difference between what petitioner owed and the amount recovered at the foreclosure sale. Petitioner cites Roth Steel Tube Co. v. Commissioner,620 F.2d 1176 (6th Cir. 1980), affg. 68 T.C. 213 (1977), and argues that Travelers should not be entitled to a tax deduction for a bad debt. Travelers, however, is not a party to this case, and the issue of its entitlement to a bad debt deduction is neither before this Court nor determinative of petitioner's right to claim a loss. Petitioner also maintains that Travelers' waiver of liability was an arm's-length agreement between unrelated parties and should not be recast as a discharge of indebtedness pursuant to a loan cancellation. Respondent replies that the settlement agreement between petitioner and Travelers was approved by and filed with the United States Bankruptcy Court pursuant to petitioner's *91 Chapter 11 plan. In any event, the contract between petitioner and Travelers is not what resulted in income. Rather, the actual foreclosure sale in 1985 relieved petitioner of the balance due on his debt to Travelers and thus resulted in income from the discharge of that indebtedness. Petitioner's discharge clearly falls within the definition set forth in section 108(d)(2). Petitioner, therefore, is not entitled to deduct the loss claimed, and he must reduce the basis of assets by the income excluded. Section 108(a)(1). Telephone Expense
A taxpayer generally may deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. Section 162(a). If the expense was incurred for a business purpose that bears a reasonably close relationship to the taxpayer's trade or business, it will be properly deductible. Commissioner v. Heininger,320 U.S. 467 (1943) No deduction, however, is allowable for personal, living, or family expenses. Section 262. Petitioner presented tangible evidence of the timing and amount of the telephone calls in the form of annotated telephone bills. Petitioner also gave credible testimony as to the business purpose of these telephone *92 calls. Petitioner's contemporaneous telephone bills and other records corroborate his testimony as to a continuing course of communication with his sister regarding attempts to save his farm. He did not claim that all calls to his sister were business related, and he deducted the cost of only those identified on his monthly bills as business calls. We conclude, therefore, that there is sufficient documentation of expenses on the record to justify allowing petitioner a business expense deduction for these telephone calls. Motor Home Expenses
Petitioner argues that he is entitled to deduct the interest, insurance, storage and license fees, and depreciation related to his motor home. To be entitled to deduct the expenses related to the motor home, petitioner must establish that the ownership and operation of the motor home was an ordinary and necessary expense of his business. Section 162(a). Respondent argues that petitioner was not entitled to the deductions related to his motor home in 1985 because the motor home was not used in his business operations during 1985. Section 167(a) provides for a depreciation deduction for the exhaustion or wear and tear of property used in a trade *93 or business or held for the production of income. The period for depreciation of an asset under section 167 begins when the asset is placed in service and ends when the asset is retired from service. Sec. 1.167(a)-10(b), Income Tax Regs. A retirement of an asset may occur as a result of a sale or exchange, by other act of the taxpayer amounting to a permanent disposition of an asset, or by physical abandonment of an asset. A retirement may also occur by transfer of an asset to supplies or scrap. Sec. 1.167(a)-11(d)(3)(i), Income Tax Regs.
Depreciation deductions may be available under the "idle asset" rule in situations where an asset, while not in actual use during the years in issue, was nevertheless devoted to the business of the taxpayer and was ready for use should the occasion arise. See Piggly Wiggly Southern, Inc. v. Commissioner,84 T.C. 739, 745-746 (1985), affd. 803 F.2d 1572 (11th Cir. 1986). Petitioner's motor home was inoperable during 1985, and thus it was not available for use "should the occasion arise." Because the motor home was not in service during 1985, petitioner is not entitled to a depreciation deduction for that year. Petitioner, however, intended to *94 repair the motor home and intended to continue to use it in his farming and rental operations. The cost of interest, insurance, and storage and license fees were ordinary and necessary expenses of maintaining the motor home while it was awaiting repair. A portion of those costs are, therefore, deductible in the same proportion as in prior years because they relate to petitioner's farming and rental businesses. Home Office Expenses
Petitioner argues that the expenses for the use of his home as an office are deductible business expenses, citing Cutting v. Commissioner, a Memorandum Opinion of this Court dated Dec. 18, 1947. That case, however, allowed the taxpayer an office expense deduction for the costs of rent, postage, stationery, and supplies, not for the cost of an office in the taxpayer's home. Section 280A establishes the general rule that no deduction is allowed with respect to business use of a taxpayer's personal residence. Section 280A(c)(1)(A), [2] however, provides that section 280A(a) shall not apply if a portion of the taxpayer's personal residence is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. Goldberger, Inc. v. Commissioner,88 T.C. 1532, 1556-1557 (1987). *95 Petitioner used his residence as the principal place of business for his farming and rental operations. The evidence fails to establish, however, that petitioner used any portion of his residence exclusively for business purposes. The legislative history of section 280A dealing with exclusive use explains: Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade *96 or business does not meet the exclusive use test. Thus, for example, a taxpayer who uses a den in his dwelling unit to write legal briefs, prepare tax returns, or engage in similar activities as well for personal purposes, will be denied a deduction for the expenses paid or incurred in connection with the use of the residence which are allocable to these activties. * * * [S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 186; H. Rept. 94-658 (1975), 1976-3 (Vol. 2) 695, 853.] Because no portion of petitioner's residence was used exclusively for business purposes, petitioner may not deduct any expenses with respect to the use of his residence. To reflect the foregoing and other issues settled by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect during the year in issue, except as otherwise noted.↩
2. Section 280A(c)(1) provides: (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) as the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.↩