HENRY F. GRINALDS AND THELMA GRINALDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grinalds v. Commissioner
Docket No. 30624-91
United States Tax Court
T.C. Memo 1993-66; 1993 Tax Ct. Memo LEXIS 66; 65 T.C.M. (CCH) 1971; February 25, 1993, Filed *66 Decision will be entered under Rule 155. Henry F. Grinalds, pro se. For respondent: John M. Altman. PATE
PATE
MEMORANDUM OPINION PATE, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' 1987 and 1988 Federal income taxes of $ 1,241 and $ 4,181, respectively. After a concession by petitioners, the issues for our decision are: (1) Whether petitioners may depreciate improvements to real property, made pursuant to a lease agreement, over the term of the lease, or, in the alternative, whether the improvements constitute personal property, depreciable as such; and (2) whether petitioners are entitled to a home office deduction. [2]
*67 Some of the facts have been stipulated and are so found. The Stipulation of Facts and attached exhibits are incorporated herein by this reference. Henry F. Grinalds (hereinafter petitioner) filed joint income tax returns with his wife, Thelma Grinalds, for 1987 and 1988 with the Internal Revenue Service Center in Ogden, Utah. They resided in Liberty Lake, Washington, at the time they filed their petition. I Depreciation
Redwood Plaza
Petitioner is engaged in the business of acquiring, constructing, improving, leasing, and managing commercial real property. During 1984 and 1985, he was a 50-percent partner in G.M.P. Partnership (hereinafter the partnership), which started construction on Redwood Plaza (hereinafter Redwood), a commercial shopping center. When Redwood was partially completed (in November 1985), petitioner purchased it from the partnership. He subsequently completed construction. In 1987 and 1988, petitioner partitioned Redwood into four Units: A, B, C, and D. He then leased Unit D to ITT Financial Services (hereinafter ITT) for a period of 5 years beginning on August 1, 1988. As a condition of the lease, petitioner installed a restroom, interior *68 walls, an office, electrical conduits, plumbing, floors, ceilings, and cabinets at costs totaling $ 51,638. On his 1988 income tax return, petitioner depreciated the improvements over the lease term of 5 years. In a notice of deficiency, respondent determined that petitioner must depreciate the improvements over 31.5 years, the depreciable life of the underlying building rather than the term of the lease. However, petitioner claims that the longer period is not applicable because the improvements made for ITT were not typical office improvements, that they consist of cubical-type partitions rather than "real offices with doors", and that extensive modification of the premises will be required for the next tenant. He argues that, because the improvements will be valueless after ITT moves out, their estimated useful life is 5 years and he should be allowed to depreciate them over that period. Alternatively, he argues that some of the improvements constitute personal property and, consequently, he should be able to depreciate them over 7 years. Section 167(a) allows as a depreciation deduction a reasonable allowance for the wear and tear of property used in a trade or business. *69 Depreciation on tangible property placed in service after December 31, 1986, is determined under section 168 pursuant to a modified accelerated cost recovery system (hereinafter ACRS), which requires that the deduction be computed utilizing the applicable statutorily prescribed recovery period. Sec. 168(a). Moreover, section 168(i)(6)(A) requires that depreciation on additions or improvements to property: shall be computed in the same manner as the deduction for such property would be computed if such property had been placed in service at the same time as such addition or improvement, * * *
Thus, improvements made to real property are depreciated using the same recovery period applicable to the underlying property as if the underlying property were placed in service at the time the improvements were made. Sec. 168(i)(6); S. Rept. 99-313, at 105 (1986), 1986-3 C.B. (Vol. 3) 105. Although there are no final or temporary regulations addressing this point, section 1.168-5(d)(4), Proposed Income Tax Regs., 49 Fed. Reg. 5967 (Feb. 16, 1984), explains that "If a lessor makes an improvement to the leased property, the cost *70 of the improvement must be recovered under the general provisions of section 168." Redwood is a commercial shopping center subject to depreciation. It is classified as nonresidential real property and the statutorily prescribed recovery period applicable to nonresidential real property is 31.5 years. Sec. 168(c); sec. 168(e)(2)(B). Therefore, pursuant to section 168(i)(6), petitioner must depreciate the improvements over 31.5 years, the recovery period applicable to the property improved. Essentially, petitioner is arguing that he is entitled to depreciate the improvements over their estimated useful life, and because their useful life is 5 years, he is entitled to use that period to compute his depreciation. Prior to 1981, depreciation deductions were determined based on the estimated useful life of the property, which is the period of time that the taxpayer expected the depreciable property to be used in his business or income producing activities. Sec. 1.167(a)-1(b), Income Tax Regs. However, in enacting the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 201(a), 95 Stat. 203, Congress abandoned the useful life concept and adopted an accelerated cost recovery system. *71 See Daley v. Commissioner, T.C. Memo. 1991-555, affd. 982 F.2d 528 (10th Cir. 1992). Under ACRS, the cost of an asset is recovered over a predetermined recovery period by applying a statutory percentage to its cost. Sec. 168; Burton v. Commissioner, T.C. Memo. 1991-12; Clinger v. Commissioner, T.C. Memo. 1990-459. Moreover, in 1986, [3] ACRS was modified by prescribing mandatory depreciation methods (rather than statutory percentages) for each ACRS class and by increasing the statutorily prescribed recovery periods. S. Rept. 99-313, at 97 (1986), 1986-3 C.B. (Vol. 3) 97. These statutory changes preclude the computation of depreciation based on estimated useful life with regard to property acquired after 1980. At trial, petitioner also argued that improvements made *72 specifically for one tenant, which may not be suitable for the next tenant, may be depreciated over the life of the lease rather than the life of the building. [4] Again, petitioner appears to be arguing that the prior law applies. Prior to 1981, improvements made by a landlord generally were considered to be capital expenditures, depreciable over the life of the improvements, without regard to the term of the lease. Sec. 1.167(a)-4, Income Tax Regs. However, if the lessor could establish that there was a practical certainty that the property could not be used in his business after termination of the lease, he would be allowed to depreciate the improvements based on the length of the lease because that period reflected the useful life of the property in the hands of the taxpayer. See, e.g., Fieland v. Commissioner, 73 T.C. 743, 753 (1980); Airport Building Development Corp. v. Commissioner, 58 T.C. 538, 539-540 (1972) (quoting from Lassen Lumber & Box Co. v. Commissioner, 6 B.T.A. 241, 248 (1927), affd. sub nom. Lassen Lumber & Box Co. v. Blair, 27 F.2d 17 (9th Cir. 1928)). *73 However, as explained earlier, we may no longer utilize the concept of useful life in computing depreciation, but must use the accelerated cost recovery system set forth in section 168. Therefore, petitioner may not depreciate the improvements over the length of the lease. [5]
*74 Alternatively, petitioner argues that some of the improvements made to Redwood constitute depreciable personal property and may be depreciated under ACRS over 7 years. He urges the Court to classify each improvement as either personal property or real property and determine the amount of the allowable depreciation accordingly. In this regard, petitioner maintains that air-conditioning units installed for ITT constitute personal property. In support thereof, he cites Piggly Wiggly Southern, Inc. v. Commissioner, 84 T.C. 739 (1985), affd. 803 F.2d 1572 (11th Cir. 1986). In that case, the taxpayer installed air-conditioning units in its supermarkets in order to meet the temperature and humidity requirements of open-front refrigerated display cases in which meat products were displayed for sale to customers. In reaching its decision, the Court applied the "sole justification" test set out in section 1.48-1(e)(2), Income Tax Regs.Id. at 750. The test provides that machinery, which is installed because it is "required to meet temperature or humidity requirements which are essential for the operation *75 of other machinery or the processing of materials or foodstuffs, * * * even though it incidentally provides for the comfort of employees" is not considered a structural component of a building, but rather is treated as tangible personal property. Id. The Court concluded that the air-conditioning units were not structural components under the regulations. However, in this case, petitioner has not submitted evidence that he installed any air-conditioning units for ITT, nor has he proven their cost, or that they were essential for the operation of other machinery or the processing of materials or foodstuffs. In fact, even if we assume that petitioner installed air-conditioning units for ITT, there is nothing in the record to show that they were installed other than to provide comfort to ITT's employees and customers. Consequently, the "sole justification" test is not met in this case. In any event, the "sole justification" test relates to the investment tax credit, which has provisions and policies of its own, and it provides only limited guidance, if any, in interpreting section 168(i)(6), the statute directly involved here. Secondly, petitioner maintains that the partitions *76 installed are tangible personal property rather than structural components. He cites Minot Federal Savings & Loan Assn. v. United States, 435 F.2d 1368 (8th Cir. 1970), which held that partitions in an office building which were easily movable, could meet almost any tenant's needs, and which were assembled with relatively few nails and screws, qualified as tangible personal property. However, Minot Federal Savings & Loan Assn. v. Commissioner, supra, has been distinguished where the partitions were not easily removable, not intended to transfer positions, and were more in the nature of adding to the structure of the building. See, e.g., McManus v. United States, 863 F.2d 491 (7th Cir. 1988); Mallinckrodt, Inc. v. Commissioner, 778 F.2d 402 (8th Cir. 1985), affg. T.C. Memo. 1984-532. Petitioner contends that the partitions he installed for ITT are not structural components as defined in the regulations to include "walls, partitions, floors, and ceilings". Sec. 1.48-1(e)(2), Income Tax Regs. We are not persuaded that the terms "addition" and "improvement" *77 as used in section 168(i)(6) necessarily are limited to structural components. Moreover, although petitioner described the walls as "partitions", he has not provided us with any details with regard to their height, the manner in which they are attached to the building, or whether they are movable. In fact, his prior argument centers around the inability to reuse the partitions for a subsequent tenant, which indicates that the partitions are affixed to the building. In sum, petitioner has failed to demonstrate that the partitions or any of the other property installed for ITT falls outside the scope of section 168(i)(6). See Consolidated Freightways, Inc. v. Commissioner, 708 F.2d 1385 (9th Cir. 1983), affg. in part and revg. in part 74 T.C. 768 (1980). Eagle Plaza
In 1977, petitioner constructed the Valley Yamaha Building and leased it, until 1987, to a retail sales and service motorcycle shop. Petitioner then leased the property to Chun Y. Hwang (hereinafter Mr. Hwang) to operate a Japanese restaurant on the premises. The lease was for a term of 5 years beginning on April 1, 1987. Prior to taking possession, *78 Mr. Hwang completely gutted the interior portion of the property. Pursuant to the lease, petitioner then improved the property to meet Mr. Hwang's needs. Such improvements consisted of the construction of restrooms, including interior walls, floors, ceilings, plumbing, and electrical conduits and receptacles. Petitioner paid $ 11,841 and $ 9,880 [6] for the improvements in 1987 and 1988, respectively. Petitioner depreciated the 1987 improvements over the 5-year period of the lease, and depreciated the 1988 improvements over the 4 years remaining on the lease, resulting in deductions of $ 2,368 for 1987 and $ 4,840 for 1988. He claims that his depreciation deductions are proper on the grounds that restoring the property to its original use at the end of the lease term will be expensive as Mr. Hwang's restaurant is a *79 "one of a kind restaurant in Spokane." Respondent maintains that the improvements must be depreciated over the recovery period of the building rather than the term of the lease. Eagle Plaza is a commercial shopping center subject to an allowance for depreciation as nonresidential real property with a statutorily prescribed recovery period of 31.5 years. Sec. 168(c). As previously explained, improvements made to real property must be depreciated using the same recovery period as is applicable to the underlying property. Sec. 168(i)(6). [7] Accordingly, petitioner is required to depreciate the Eagle Plaza improvements over 31.5 years. Alternatively, petitioner argues that the restrooms he installed for Mr. Hwang constitute tangible personal property and therefore may be depreciated *80 under ACRS over 7 years because: (1) They were installed pursuant to the tenant's specifications; (2) the restrooms will not accommodate a new tenant; and (3) they may be removed without damaging the building. However, the regulations provide that the term structural components include "walls, partitions, floors, and ceilings, as well as any permanent coverings therefor such as panelling or tiling; windows and doors; * * * plumbing and plumbing fixtures, such as sinks * * * electric wiring and lighting fixtures". Sec. 1.48-1(e)(2), Income Tax Regs. Petitioner has not offered evidence to show that the restrooms he constructed do not contain the structural components enumerated in the regulation. We find that the improvements he constructed to the Eagle Plaza building are additions or improvements within the scope of section 168(i)(6) and must be depreciated as such. II Home Office Deduction
In 1987 and 1988, petitioner maintained an office in his home which he used for his business activities and claimed depreciation deductions based on such use. On Schedule C of his 1987 and 1988 income tax returns, he reported gross net losses of $ 11,445 and $ 5,070 for 1987 and 1988, *81 respectively. His Schedule C deductions included, for each year, $ 1,059 of depreciation attributable to his home office. Respondent maintains that the limitations contained in section 280A(c)(5) preclude the deduction of depreciation on petitioner's home office. Section 280A(c)(5) limits the deduction for the business use of a home office to the excess of: (A) the gross income derived from such use for the taxable year, over (B) the sum of -- (i) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit * * * was so used, and (ii) the deductions allocable to the trade or business (or rental activity) in which such use occurs (but which are not allocable to such use) for such taxable year.
Thus, the home office deduction is limited to the excess of the gross income generated from the business activity conducted in the home office less all other deductible expenses attributable to such activity, but which are not allocable to the use of the unit itself. H. Rept. 99-426, at 134-135 (1985), 1986-3 C.B. (Vol. 2) 135. In other words, the deduction may not create or increase a *82 net loss from the business activity to which it relates. Id.
In order to determine whether the limitations for section 280A(c)(5) operate to disallow the deductions for the depreciation on petitioner's home office, the first thing we must decide is the amount of the "gross income derived from such use during the taxable year", as specified in section 280A(c)(5)(A). In making the determination in the notice of deficiency, respondent took into account only those amounts of gross income petitioner reported on his Schedule C. However, petitioner operated his entire business activity from his home office; that is, he acquired, constructed, improved, leased, managed, and sold commercial real property from his home office. Moreover, in prior years, he had sold some of the real property he had previously leased. These sales were made on installment contracts and he collected payments thereon during the year in issue. Therefore, the gross income he realized from his business activity (which we must take into account under section 280A(c)(5)(A)) is not only the gross income he reported on Schedule C, but also those amounts derived from leasing property and selling leased property *83 reported on Schedules B, D, and E. Given the extent of petitioner's leasing and sales activity, we find the latter amounts constitute business income. When taking these amounts into account, petitioner generated a sufficient amount of gross income to avoid the loss limitations of section 280A(c)(5). For these reasons, we hold that petitioner may deduct the depreciation on his home office. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In addition to the issues set out above, petitioner claimed a loss for the undepreciated cost of improvements to a building demolished by a new lessee. Respondent determined that such cost had to be depreciated over 5 years, the term of the new lease. On brief, petitioner agreed with respondent's determination. Consequently, we need not discuss this issue.↩
3. Section 168 was amended by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 201, 100 Stat. 2085, 2121.↩
4. Petitioner cites Seahill Co. v. Commissioner, T.C. Memo. 1964-56, in support of his argument that "leasehold improvements are amortizable over the cost of the tenant's lease." In Seahill↩, we held that certain expenditures (required as a condition of the lease) had to be capitalized rather than expensed as repairs because they were part of a general rehabilitation and improvement plan, and that commissions paid by a lessor to procure a lease were amortizable over the life of such lease. Petitioner attempts to combine these holdings to achieve the conclusion he desires, but that case simply does not address the period under which tangible improvements made by the lessor pursuant to a provision in a lease may be depreciated.
5. See 1 Bittker & Lokken, Federal Taxation of Income Estates and Gifts, par. 23.1.9 at 23-21 n.35 (1989), where the authors state that the lessors' argument (as described above) "is foreclosed for property placed in service after 1980 because the ACRS rules, which require that depreciation be taken over prescribed recovery periods rather than the useful life of the property in the taxpayer's business", provide no special rule for property built for a lessee.↩
6. The parties stipulated $ 9,880 as the cost of the 1988 improvements. However, the notice of deficiency shows $ 9,890 as the cost. The record does not disclose the reason for the $ 10 difference.↩
7. Even though Eagle Plaza was placed in service prior to the enactment of ACRS, improvements thereto are subject to ACRS rules. Sec. 168(i)(6)(B). See S. Rept. 99-313, at 105 (1986), 1986-3 C.B. (Vol. 3) 105.↩