T.C. Memo. 2011-214

UNITED STATES TAX COURT

CHARLES R. AND SHANDA G. DOUGLAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24663-09.                    Filed August 31, 2011.

<u>Howard S. Levy</u>, for petitioners.

<u>Terry Serena</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined a deficiency of $44,625

and an accuracy-related penalty of $8,925 under section 6662(a)[1]

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

for 2007.  After a concession,[2] the issues remaining for decision are:

(1)  Whether petitioners are entitled to a flowthrough deduction under section 179 for expenses of an aircraft owned by an S corporation, Bantam Leasing, Inc. (Bantam).  We hold that they are not;

(2)  whether petitioners are liable for an increased deficiency arising from the disallowance of other flowthrough expenses from Bantam associated with the maintenance of an aircraft.  We hold that they are; and

(3)  whether petitioners are liable for an accuracy-related penalty under section 6662(a) based on a substantial understatement of income tax.  We hold that they are not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Ohio.  Since the time of its organization, the executive office of Bantam has been in Bethel, Ohio.  Petitioners timely filed their joint Federal income tax return for 2007.  In July 2009 respondent issued a notice of deficiency to petitioners

---

[2]Respondent concedes that petitioners were not negligent within the meaning of sec. 6662(c) in claiming the deductions at issue.

determining a deficiency in income tax of $44,625 and an addition to tax of $8,925.

In 2007 and prior years Shanda Douglas was the sole owner and officer of Bantam. Charles Douglas was an employee of Bantam, which operates an over-the-road trucking business.

Roughly 75 percent of Bantam's business is classified as "critical timing" delivery services. In this line of work, punctual dispatch of cargo is important as Bantam's accounts could be placed in jeopardy should Bantam fail to deliver on time. Mr. Douglas believed an aircraft would minimize the risk of losing customers on account of tardy delivery, not by moving freight but by potentially replacing drivers who become ill or who are unable to continue. Mr. Douglas consulted his certified public accountant (C.P.A.), Elaine Simmons, about the tax aspects of purchasing an aircraft.

Bantam purchased a Cessna 150 aircraft for $19,500 in October 2006 and then sold it for $26,000 in August 2007. Later in 2007 Bantam purchased a Cessna 172 aircraft for $135,000, and it reported this purchase on Form 4562, Depreciation and Amortization, as an item which Bantam elected to expense under section 179 up to the statutory maximum for 2007 of $125,000. Bantam also deducted costs of $10,580 associated with upkeep and storage of the aircraft in 2007. Petitioners reported the section 179 deduction as flowing through to their personal income

tax return. The Form 4562 was attached to Bantam's Form 1120S, U.S. Income Tax Return for an S Corporation, which was prepared and signed by C.P.A. Elaine Simmons. Bantam maintained the Cessna 172 at the Georgetown, Ohio, airport, which is in a county adjoining the one where Bantam had its executive offices.

Mr. Douglas began taking flying lessons in 2006 with the Cessna 150 and continued his flying lessons in 2007 with the Cessna 172. By the end of 2007 Mr. Douglas had advanced no further in Federal Aviation Administration certification than holder of a student license. From the time of Bantam's purchase of the Cessna 150 until the corporation sold it, this aircraft was never used for transporting replacement drivers or for any other Bantam business activity. From the time of Bantam's purchase of the Cessna 172, including all of 2007, no employees or officers of Bantam held a pilot's license that would have enabled them to use the aircraft to transport a replacement driver. The sole use of the aircraft in 2007 was for Mr. Douglas' flying lessons.

OPINION

Section 179(a) allows taxpayers to elect to expense certain depreciable business assets and currently deduct the cost of property for the taxable year in which the property is placed in service. According to section 1.179-4(e), Income Tax Regs., the time property is "placed in service" means the time that property

is first placed by the taxpayer in a condition or state of readiness and availability for a specifically assigned function, whether for use in a trade or business, for the production of income, in a tax-exempt activity, or in a personal activity. If the property is used partially for business, a deduction under section 179 is allowed only if the business use is more than 50 percent of the property's use. Sec. 1.179-1(d), Income Tax Regs. Mr. Douglas used the aircraft in 2007 for personal flying lessons, and the aircraft was never used in the conduct of a trade or business of Bantam. Petitioners bear the burden of proving that the aircraft was used for a business purpose of Bantam regarding the section 179 flowthrough expense. Respondent bears the burden of proof regarding the increased deficiency adjustment disallowing the aircraft maintenance expenses which was asserted in respondent's trial memorandum. See Rule 142(a).

Depreciation deductions may be available under the "idle asset" rule in situations where an asset, while not in actual use, was nevertheless devoted to the business of the taxpayer and was ready for use should the occasion arise. See Piggy Wiggly S., Inc. v. Commissioner, 84 T.C. 739, 745-746 (1985), affd. 803 F.2d 1572 (11th Cir. 1986). In the context of the established facts, however, petitioners' attempt to employ the "idle asset" rule cannot succeed as their aircraft does not fit within the rule's requirements. The Cessna 172 was not idle in that it was

used for training by Mr. Douglas, and it was simply never available for its alleged business function of providing an expedited method of transporting drivers to retrieve disabled vehicles. An aircraft cannot be considered ready and available for business use without a suitable pilot to fly it. During 2007 no employees or officers of Bantam held a pilot's license that would have enabled them to use the aircraft to transport a replacement driver. Petitioners' vague assertion that there were "stand-by pilots" in 2007 is not credible. There is no evidence in the record, aside from Mr. Douglas' statement, that there were any "stand-by" pilots for the aircraft; and there is no evidence at all that would support a finding that Bantam had access to standby pilots on an expedited schedule, which was the alleged business reason for the aircraft. There is no evidence in the record of any agreement between a qualified pilot and Bantam that might suggest his or her availability for the purpose of flying drivers to disabled vehicles on short notice.

The Cessna 172 aircraft was not available to perform its alleged function in 2007. Therefore, we find that petitioners are not entitled to a flowthrough deduction under section 179. Furthermore, the increased deficiency of $10,580 is also sustained because respondent has established that the deductions in question related to the aircraft.

Finally, we come to the issue of whether petitioners should be liable for a penalty for the underpayment of their Federal income tax for 2007. A taxpayer may be liable for a 20-percent penalty on the portion of an underpayment of tax attributable to a substantial understatement of income tax. See sec. 6662(a), (b)(2); sec. 1.6662-2(a)(2), Income Tax Regs. The accuracy-related penalty does not apply, however, to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. Reasonable cause has been found when a taxpayer selects a competent tax adviser, supplies the adviser with all relevant information and, consistent with ordinary business care and prudence, relies on the adviser's professional judgment as to the taxpayer's tax obligations. Sec. 6664(c)(1); Estate of Young v. Commissioner, 110 T.C. 297 (1998).

Mr. Douglas did consult with his C.P.A. tax return preparer, Elaine Simmons, about the aircraft-related deductions, and his reliance on her advice was in good faith. Accordingly, we do not sustain respondent's determination of the accuracy-related penalty because petitioners chose a competent adviser, properly provided information, and relied in good faith on her advice. Petitioners accordingly had reasonable cause for, and acted in good faith with respect to, the underpayment for 2007 and

therefore are not liable for the section 6662(a) accuracy-related penalty.

A Rule 155 computation will be necessary to compute the amount of the increased deficiency, but no addition to tax is applicable.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.