AUGUST C. SPETH AND ELLEN B. SPETH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Speth v. Comm'r
Docket No. 6098-88
United States Tax Court
T.C. Memo 1990-374; 1990 Tax Ct. Memo LEXIS 390; 60 T.C.M. (CCH) 188; T.C.M. (RIA) 90374; July 23, 1990, Filed *390 Decision will be entered under Rule 155. Thomas A. Greco, Kevin O'Hara, and Joseph E. Mudd, for the petitioners. Louis B. Jack and Sherri Spradley, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency *391 of $ 105,737.52 in petitioners' Federal income taxes for 1981 and an addition to tax of $ 52,868.72 under section 6653(b). Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues remaining for decision are (1) whether petitioners received unreported income of $ 69,232 from their concession business; (2) whether petitioners received unreported income of $ 133,016 deposited to a savings account; (3) whether petitioners are entitled to a $ 1,326 deduction for repair expenses; (4) whether petitioners are entitled to a $ 2,263 deduction for depreciation; and (5) whether petitioners are liable for the addition to tax for fraud. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. Petitioners resided in Seal Beach, California, at the time they filed their petition. During part of 1981, petitioners rented a house at 350 Ocean Boulevard, Seal Beach, California. During 1981, petitioners were constructing *392 a new home at 410 Ocean Boulevard, Seal Beach, California. They paid for many of the construction expenses in cash. Petitioners' Income-Producing Activities
Petitioners engaged in various business activities during 1981, some of which are not material to our opinion and are not described herein. From at least 1980 through 1983, petitioners owned and operated a concession business known as Pacific Terrace Concessions (Pacific Terrace) at the Olympic Auditorium in Los Angeles, California. At all times, Pacific Terrace was a sole proprietorship and maintained its books using the accrual method of accounting. Pacific Terrace paid rent to the Olympic Auditorium based on varying percentages of gross receipts. In January 1981, petitioners purchased for $ 40,000 the Copper Keg, a beer bar located in Long Beach, California. Petitioners owned and operated the Copper Keg as a sole proprietorship. During 1981, petitioners built a garage-like structure in the rear of the Copper Keg to house two mechanical bulls to be used by customers of the bar. Petitioners' Real Estate
During 1981, petitioners owned 11 single-family residential properties at the following addresses: *393 410 Ocean Boulevard
Seal Beach, California
1529 Bernard Place
Bakersfield, California
3000 Fernvale
Bakersfield, California
3004 Fernvale
Bakersfield, California
3005 Fernvale
Bakersfield, California
1728 Los Robles
Bakersfield, California
900 N. Forrest
Altus, Oklahoma
901 N. Forrest
Altus, Oklahoma
902 N. Forrest
Altus, Oklahoma
912 N. Forrest
Altus, Oklahoma
301 West B. Street
El Dorado, Oklahoma
During 1981, the residence located at 3000 Fernvale, Bakersfield, California, was used by petitioners as their personal residence in addition to their home at 410 Ocean Boulevard. During 1981, seven of petitioners' properties were occupied by family members, the property at 3005 Fernvale was rented, and two properties were vacant. During 1981, the residence located at 902 N. Forrest, Altus, Oklahoma, was occupied by Mrs. Speth's sister, Mildred Chumley. For 7 months during 1981, Mildred Chumley deposited rent payments of $ 50 per month into petitioners' savings account number XX-8394 at First State Bank, Altus, Oklahoma. Mrs. Speth spent approximately the first 6 months of 1981 in Altus, Oklahoma, caring for her dying mother. During that portion *394 of 1981, the residence located at 900 N. Forrest, Altus, Oklahoma, was occupied by Mrs. Speth's mother, who died June 5, 1981. During 1981, the residence at 901 N. Forrest, Altus, Oklahoma, was occupied by various family members of Mrs. Speth for the purpose of visiting Mrs. Speth's terminally ill mother, and the residence at 912 N. Forrest, Altus, Oklahoma, was occupied for a few months by a nurse hired to take care of Mrs. Speth's mother. During 1981, the residence at 301 West B. Street, El Dorado, Oklahoma, was occupied by Mrs. Speth's brother. During 1981, the residences at 1529 Bernard Place and 3004 Fernvale, Bakersfield, California, were unoccupied. During 1981, petitioners rented the residence at 3005 Fernvale, Bakersfield, California, for $ 325 per month. During 1981, petitioners received interest income of at least $ 10,901.56 and dividend income of $ 1,608. Petitioners reported interest income of $ 7,200 on their 1981 tax return, but they failed to report any dividend income. Petitioners concede that they had additional dividend or interest income of $ 3,329 during 1981. Petitioners' Bank Accounts
The checking account number XXX-XX4-767 at Security Pacific *395 National Bank, Long Beach, California, was used to pay the expenses of Pacific Terrace as well as to pay petitioners' personal expenses and expenses attributable to real properties owned by petitioners. Petitioners also used a partnership checking account for another business activity, the Speth-Phillips partnership doing business as Main Event Concessions, to pay personal expenses. During 1981, petitioners maintained bank accounts including, but not necessarily limited to, the following: Account
Balance
Bank
No.
Type
1/1/81
12/31/81
First State Bank
Altus, OK
XX-8394
Savings
$   6,357.52
$   7,108.89
First State Bank
Altus, Ok
XX-5685
Checking
$      55.97
$      12.55
American S&L
Anadarko, OK
X-X367-6
Savings
$     411.27
$   4,116.38
American S&L
Anadarko, OK
X-XXX043-6
CD
$  23,983.69
$  23,983.69
American S&L
Anadarko, OK
XX-XXX771-6
CD
$   7,000.00
$   7,000.00
Santa Barbara S&L
Bakersfield, CA
XX-XXX-4105
Savings
$  27,246.24
$  30,615.12
Santa Barbara S&L
Bakersfield, CA
XX-XXX-2400
Savings
$     988.87
$   1,056.21
Santa Barbara S&L
Bakersfield, CA
XX-XXX-4128
Savings
$  11,084.46
$  12,455.01
Security Pacific
Bakersfield, CA
XXX-XX2875
Savings
$   5,094.09
unknown  Great Western Sav.
Long Beach, CA
XXX-XXX609-2
CD
$   6,524.05
$   7,057.31
Security Pacific
Long Beach, CA
XXX-X-X9511
Savings
$  29,786.86
$  31,100.00
Security Pacific
Seal Beach, CA
XXX-XX6601
Savings
$   2,915.07
$   3,134.24
Security Pacific
Pacific Terrace
XXXXX4767
Checking
$  24,882.73
$   3,650.97
Farmers & Merchants
Copper Keg
XX9821
Checking
$   4,691.46
$   5,370.44
Total
$ 151,022.28
$ 136,660.81
*396 In addition to their bank accounts, during the year in issue petitioners maintained two safes at their home at 350 Ocean Boulevard. Petitioners kept large sums of cash in these safes. During 1980, petitioners were involved in several legal proceedings. At that time, petitioners' attorney advised them to convert funds to cash to ensure that their funds could not be attached. Petitioners' Recordkeeping and Tax Reporting
Petitioners retained Frank P. Uehle (Uehle), a certified public accountant, who was their accountant and tax preparer for approximately 20 years, including 1981. Uehle hired and supervised bookkeepers who worked out of Uehle's office in Seal Beach, California, but were employed and paid by petitioners. For a number of years prior to the year in issue, petitioners' bookkeeper was Verjelio Antonio (Antonio). During 1981, Antonio left and petitioners hired several part-time bookkeepers. Petitioners' accounting systems for Pacific Terrace and the Copper Keg consisted of sales journals, cash disbursements journals, general ledgers, monthly general ledger trial balances, and monthly financial statements. Each week Mr. Speth would take his unpaid bills *397 to his bookkeeper in Uehle's office and sign checks for the previous week's bills. The bookkeeper would enter the checks in the cash disbursements journal and post the expenses to various expense accounts. Uehle's employee, Kim Miller, would reconcile petitioners' bank statements and prepare monthly general ledgers and financial statements. Income from Pacific Terrace was accrued based on scheduled events at Olympic Auditorium at which concession items were sold. After each event, the manager of Pacific Terrace would prepare a detailed statement of items sold by each concession stand. These statements were submitted to petitioners' bookkeeper, who would review the statements and prepare a recapitulation. The bookkeeper's schedules were then used by Uehle's staff to prepare petitioners' general ledgers, financial statements, and tax returns. Pacific Terrace's general ledger included two drawing accounts for petitioners: a general purpose "Drawings" account, used to account for amounts paid out of the Pacific Terrace checking account to petitioners or for petitioners' personal expenses; and an account titled "Draw-House-S.B.," used to account for expenses related to the construction *398 of petitioners' new home in Seal Beach. During 1981, a total of $ 24,802.76 was debited to the general purpose drawing account and $ 21,844.56 was debited to the drawing account for the construction of petitioners' new house. On a Schedule C of their 1981 Federal tax return, petitioners reported gross receipts for Pacific Terrace of $ 311,174, deducted cost of goods sold of $ 93,760 and expenses of $ 251,048, and claimed a net loss of $ 33,634. Similarly, on another Schedule C of their 1981 return, petitioners reported gross receipts for the Copper Keg of $ 124,919 plus commissions of $ 9,570, deducted cost of goods sold of $ 50,890 and expenses of $ 87,178, and claimed a net loss of $ 3,579. Amounts reflected in the drawing accounts were not deducted on petitioners' Schedule C. The amounts deducted on Schedule C as expenses of Pacific Terrace did, however, include swimming pool maintenance at petitioners' personal residence, 4 items totaling $ 121.62 posted as "repair & maintenance"; and flowers sent from Mr. Speth to Mrs. Speth in Oklahoma and to her sister, 3 items totaling $ 96.60 posted as "office expenses." During 1981, petitioners rented construction equipment from *399 Handy Nabor Rents and deducted a total of $ 1,605.87 on Schedule C. This equipment was used in the construction of petitioners' personal residence and for the construction of mechanical bull pens at the Copper Keg. Petitioners also deducted $ 1,326 paid to Joe Knapp, petitioners' handyman and gardener in Bakersfield. Mr. Knapp performed gardening services for five Bakersfield properties owned by petitioners, including petitioners' personal residence. During 1981, Mrs. Speth issued check number 1208 on the Main Event Concessions checking account to Voeltz-Montero Associates, A.I.A. for $ 1,917.94. Of that amount, $ 1,401.25 was payment for architectural services performed by Stewart L. Voeltz for the construction of petitioners' residence at 410 Ocean Boulevard. The remaining $ 516.69 was payment for architectural services relating to construction at the Copper Keg. Unreported Income
Respondent determined that petitioners had $ 5,844 of deposits in excess of the $ 134,489 of gross receipts reported by petitioners on their 1981 return. Petitioners concede the $ 5,844 was income from a pool table in the Copper Keg. Petitioners did not report any rental income on *400 their 1981 income tax return. No Schedule E was attached to the 1981 return, and no rental properties or rental expenses were disclosed on the return, although rental expenses were included in the amounts deducted on Schedule C. At the time their 1981 tax return was being prepared, petitioners told Uehle that their properties were either vacant or occupied by relatives and that they had received no rental income during 1981. During the audit of petitioners' 1981 return, Uehle told the Internal Revenue Service (IRS) auditor that petitioners had received no rental income during 1981. In their answers to respondent's interrogatories, petitioners subsequently admitted to receiving rent of $ 50 per month from Mildred Chumley. On December 1, 1989, petitioners advised respondent that they received rental income of $ 3,900 from tenants occupying the residence at 3005 Fernvale during 1981. The Audit
Respondent's revenue agent, Rebecca Terrill (Terrill), audited petitioners' 1981 Federal tax return. Terrill began working for the IRS in 1976 and had been working in the office audit section for about 4 years when she began the audit of petitioners' return. Terrill began the audit *401 by mailing to petitioners a contact letter dated July 6, 1983. Uehle responded to the contact letter on petitioners' behalf and met with Terrill on August 22, 1983. At that meeting, Uehle provided Terrill with copies of petitioners' tax returns for prior and subsequent years, as well as journals for petitioners' two Schedule C businesses, Pacific Terrace and the Copper Keg. At the conclusion of their initial meeting, Terrill asked Uehle to produce all records pertaining to petitioners' bank accounts, both business and personal. Subsequently, Uehle produced two large file boxes containing additional business records, including bank statements and canceled checks for accounts maintained in the names of Pacific Terrace and the Copper Keg. Terrill performed bank deposit analyses of the bank records provided by Uehle. As part of the bank deposit analyses, Terrill examined bank records for a savings account maintained in the name of the Copper Keg. In the audit work papers, Terrill recorded the amounts of 3 deposits to the Copper Keg's savings account as $ 112,636, $ 10,546, and $ 9,834, but she recorded the total of the 3 deposits as $ 113,016. Terrill photocopied the savings *402 account bank records, but she neglected to record the name of the bank or the account number in the work papers. On April 3, 1985, Terrill finished the audit of petitioners' 1981 return and telephoned Uehle. On April 23, 1985, Uehle went to Terrill's office and picked up the 1981 books and records for both Pacific Terrace and the Copper Keg. On May 2, 1985, Terrill referred petitioners' case to the fraud coordinator for approval of the civil fraud addition. Terrill attached to the fraud referral copies of all bank statements, petitioners' books and records, and her work papers. The fraud coordinator approved Terrill's fraud referral on May 23, 1985. The memorandum approving Terrill's fraud referral did not mention insufficient documentation or missing bank records. Terrill was thereafter promoted from office auditor to revenue agent, and all records pertaining to petitioners' audit, including the photocopies of petitioners' bank records, remained with the office audit group. After Terrill left the office audit group, petitioners' case was reassigned to office auditor Melva Square (Square). On October 1, 1986, Square closed petitioners' case as "unagreed." In May 1988, *403 the IRS district counsel assigned to petitioners' case telephoned Terrill and requested that she provide the bank name and account number for the savings account held in the name of the Copper Keg, since that information was missing from her work papers. Terrill telephoned Uehle and asked him for the bank name and account number for the Copper Keg savings account. Uehle told Terrill that the savings account was at American Savings & Loan but that he did not know the account number. OPINION With the exceptions of the addition to tax for fraud and new issues, taxpayers generally bear the burden of proving that respondent's determinations are erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975), affg. a Memorandum Opinion of this Court; Rule 142(a). Petitioners argue that respondent's determination of unreported income is arbitrary. Specifically, petitioners contend that respondent's determination that they received unreported income of $ 133,016 deposited to a savings account maintained in the name of the Copper Keg is without rational foundation. Petitioners therefore contend that *404 respondent has the burden of going forward and producing evidence to show that petitioners had unreported income. Respondent has presented substantive evidence linking petitioners to an income-producing activity and demonstrating that petitioners received unreported income. Through his revenue agent's testimony and work papers, respondent has shown that petitioners had unreported bank deposits. See Rule 1004, Federal Rules of Evidence. Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). The connection between petitioners and income-producing activities, including Pacific Terrace and the Copper Keg, is sufficient to permit the presumption of correctness to attach to the Commissioner's determination. Petitioners have the burden of proving by a preponderance of the evidence that respondent's determinations are erroneous. See Malinowski v. Commissioner, 71 T.C. 1120, 1124-1125 (1979). Unreported Income
In the notice of deficiency, *405 respondent determined that petitioners had additional income of $ 118,862 from the Copper Keg, consisting of $ 5,844, now conceded by petitioners, and $ 113,016 of unreported deposits to a savings account maintained in the name of the Copper Keg. At trial, however, respondent contended that, because of an error in his agent's work papers, the unreported deposits totaled $ 133,016, rather than $ 113,016. Accordingly, this would result in additional income of $ 138,860, rather than $ 118,862. Petitioners contend that no savings account existed for the Copper Keg, but neither claimed under oath that they had no bank accounts beyond the ones identified in the record. In the audit work papers, Terrill noted the amounts of three deposits to a Copper Keg savings account as $ 112,636, $ 10,546, and $ 9,834. She entered an erroneous total of those amounts. Terrill photocopied the savings account bank statements, but she neglected to record the name of the bank and the account number in the work papers. Unfortunately, the copies of the bank statements were subsequently lost. Terrill's testimony, however, was unambiguous that she reviewed records of a savings account in the name of *406 the Copper Keg and copied bank statements for that account, that there were unreported deposits to that account, and that the adjustment in the notice of deficiency was based on her examination of such records. Uehle told her that the account was at American Savings & Loan, and petitioners maintained accounts at American Savings & Loan in Oklahoma. Petitioners argue that the Copper Keg, a small beer bar in its initial year of operation, did not generate sufficient business to account for additional income of over $ 130,000. We are not required to accept petitioners' generalized statements and decline to do so here without further supporting evidence. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court; Tokarski v. Commissioner, 87 T.C. at 77. Petitioners have failed to carry their burden of proving that respondent's determination is erroneous. On the other hand, respondent has not proven that an increased deficiency results from correcting the total of the unexplained deposits because we cannot determine without the records whether the mistake occurred in recording the amounts or in adding them up. *407 Respondent also determined that petitioners had unreported income of $ 69,232, represented by deposits to the Pacific Terrace checking account. Petitioners contend that these deposits consisted of loans of $ 27,464.74 and capital contributions of $ 28,000 from petitioners to Pacific Terrace; they contend that the source of these funds was cash held in a safe at petitioners' residence. Petitioners also contend that, in a prior year, Pacific Terrace advanced funds to Civic Center Concessions, Inc., a corporation wholly owned by petitioners. Petitioners argue that, during the year in issue, Civic Center repaid $ 10,090.79 of the advances that it had previously received from Pacific Terrace. Petitioners' only evidence of these claimed loans and capital contributions are entries on the books and records maintained for their various business activities. Petitioners contend that, because they maintained adequate records of income actually received, respondent is prohibited from determining their income by an indirect method. The record establishes, however, and petitioners have conceded that their books and records failed to reflect correctly their income and deductions. Petitioners *408 have produced no persuasive evidence of the purported transactions between them and their wholly owned businesses. Moreover, there is no evidence linking their cash hoard with the unreported bank deposits or establishing that the sums in their safes were received from nontaxable sources in prior years. Finally, respondent determined that petitioners had additional dividend or interest income of $ 3,329. Petitioners concede this amount. On brief, respondent contends that petitioners actually had additional interest income of $ 3,701.56 plus additional dividend income of $ 1,608, for a total of $ 5,309.56. Issues not raised by the pleadings or at trial but argued for the first time on brief should not be considered. Aero Rental v. Commissioner, 64 T.C. 331, 338 (1975). Accordingly, we do not consider this issue. Business Expenses
Petitioners deducted $ 1,326 paid to Joe Knapp, petitioners' handyman and gardener in Bakersfield. The only evidence of the nature of the expense is Mrs. Speth's unsupported testimony that "Mr. Knapp's a nice man who is a gardener in Bakersfield. * * * He took care of -- I believe he took care of all of our rental properties. *409 " On brief, petitioners concede that their personal residence was one of the five Bakersfield properties for which Mr. Knapp performed services. Petitioners, therefore, now claim that they are entitled to 80 percent of the claimed deduction of $ 1,326. Petitioners, however, presented no evidence to support this allocation or to substantiate a business purpose for the gardening expenses. Mrs. Speth's testimony is insufficient to prove that these expenses were deductible under section 162, rather than nondeductible personal, living, or family expenses under section 262. Depreciation
Petitioners contend that all of the properties, except for 3000 Fernvale and 900 N. Forrest, were purchased or acquired for rental purposes. Respondent argues that petitioners' real estate activities during 1981 were not engaged in for profit and, consequently, no depreciation deduction should be allowed. Petitioners contend that the record shows that they had a profit objective for the properties that were actually rented during 1981. Petitioners further argue that their profit objective extended to all of their properties, other than 3000 Fernvale. The parties have stipulated that, *410 in the event it is determined that petitioners are entitled to depreciation under section 167 for 1981, the amount of such depreciation for all properties would be $ 2,233, as reported on their tax return. The properties occupied by petitioners and their relatives during 1981 were not used in a trade or business or held for the production of income within the meaning of section 167. Accordingly, no depreciation deduction can be allowed for these properties. Sec. 262. Petitioners presented no evidence that the vacant properties were available for use "should the occasion arise." See Piggly Wiggly Southern, Inc. v. Commissioner, 84 T.C. 739, 745-746 (1985), affd. 803 F.2d 1572 (11th Cir. 1986). Petitioners, therefore, are not entitled to a depreciation deduction for the vacant properties. Finally, even if we could conclude that petitioners had a profit objective with respect to the two properties that were actually rented during 1981, there is no evidence in the record that would allow us to allocate some portion of the total stipulated depreciation to those properties. Petitioners have failed to carry their burden of proof on this issue. *411 Addition to Tax
Respondent contends that petitioners' underpayment of income tax for the year in issue is due to fraud. Section 6653(b), for 1981, provides an addition to tax of 50 percent of the amount of an underpayment if any part of the underpayment is due to fraud. The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, an underpayment and that some part of the underpayment was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an *412 understatement of income. Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). *413 The mere failure to report income, however, is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962). Fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). Other badges of fraud that may be taken into account include the filing of false documents, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Respondent contends that petitioners willfully attempted to evade tax by understating income from several of their businesses, by understating their interest and dividend income, and by overstating their business deductions. Respondent also contends that petitioners deducted thousands of dollars of personal expenses, such as home rent, home utility payments, swimming pool maintenance, flowers, parking tickets, and the cost of building a new residence, by hiding them among *414 the legitimate business expenses of Pacific Terrace. Further, respondent argues that petitioners and their representatives gave inconsistent and contradictory explanations for these personal deductions as well as for the underreported income. Finally, respondent argues that petitioners concealed their real estate and certain other business activities from the IRS. Although we sustained respondent's determinations of petitioners' unreported income and overstated deductions, we did so because petitioners did not carry their burden of proving that respondent's determinations are erroneous. Respondent cannot rely on petitioners' failure of proof to satisfy respondent's burden of presenting proof of fraud. Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), affg. in part and revg. in part a Memorandum Opinion of this Court. See also Ellington v. Commissioner, T.C. Memo. 1989-374. Respondent argues that petitioners claimed deductions for personal expenses and concealed those deductions by including them on Schedule C. Petitioners have conceded many of the deductions that respondent disallowed. Respondent has not identified any substantial *415 amounts in this category or presented any probative evidence that petitioners knew that they were claiming unallowable deductions at the time they filed their 1981 tax return. Based on the entire record, we conclude that respondent has failed to prove fraud. Respondent did not make a timely alternative claim for an addition to tax for negligence. Both sides in this case have made errors and taken inconsistent or belated positions. Apparently each has lost records or copies of records relating to the Copper Keg. Petitioners acknowledge: Petitioners are not model record keepers and their tax returns were not prepared in full and complete conformity with all IRS guidelines. Some personal expenses were, in fact deducted. Some income may have escaped inclusion. However, the proven amounts of deductions and income are small in dollar amount and insignificant in comparison to the total amount shown on the return.
We incorporate in full our comment made in a similar situation: We do not intend by this opinion to vindicate petitioners. Their testimony at trial was unpersuasive, although not demonstrably false. Their destruction of records, certain inconsistent *416 statements, and the various items of underreporting are troublesome and suspicious. Most of their arguments are totally unsupported by the evidence. Suspicion, alone, however is not a sufficient basis for determination of fraud. [Manzoli v. Commissioner, 55 T.C.M. 1259 at 1267, 57 P-H Memo T.C. par. 88,299 at 88-1528, affd. 904 F.2d 101 (1st Cir. 1990); citations omitted.]
On the record the parties have made and failed to make, all issues have been decided by application of the rules on burden of proof rather than on persuasive evidence. Neither side should take comfort from our decision. To reflect the foregoing and other issues settled by the parties, Decision will be entered under Rule 155.