SALVATORE S. SATULLO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent. JAMES B. AND DONNA F. STINNETT, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Satullo v. Commissioner
Docket Nos. 25529-89, 30046-89
United States Tax Court
T.C. Memo 1993-614; 1993 Tax Ct. Memo LEXIS 633; 66 T.C.M. (CCH) 1697; December 22, 1993, Filed *633 For petitioners: H. J. A. Alexander. For respondent: Sergio Garcia-Pages and Kenneth A. Hochman. DAWSON, PETERSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These consolidated cases were assigned to Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: In these consolidated cases respondent determined deficiencies in petitioner Salvatore S. Satullo's and petitioners James B. and Donna F. Stinnett's Federal income taxes for taxable year 1985 and additions to tax attributable to the deficiencies, as follows: Salvatore S. Satullo, docket No. 25529-89: Year
Deficiency
1985
$ 35,600
James B. and Donna F. Stinnett, docket No. 30046-89: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6661
1985
$ 177,083
$ 8,071
$ 9,187
[1]
$ 44,270
*634 Respondent also determined that petitioners James B. and Donna F. Stinnett are liable for increased interest under section 6621(c). In an amendment to answer, respondent asserted that petitioner Salvatore S. Satullo is liable for additions to tax under section 6653(a)(1) in the amount of $ 1,780 and under section 6653(a)(2) in the amount of 50 percent of the interest due on $ 35,600 and for an addition to tax under section 6661 in the amount of $ 8,900. These cases involve issues arising from the purchases of condominium units in Atlanta, Georgia, in a building commonly known as the "Al Hambra Apartments" (Al Hambra). Unless otherwise indicated, use of the term "petitioners" in this opinion refers both to petitioner Salvatore S. Satullo and to petitioners James B. and Donna F. Stinnett. After a concession in docket No. 30046-89, the issues for decision are: (1) Whether petitioners are entitled to deductions for charitable contributions under section 170(f)(3)(B)(iii) for granting an easement over the facades of their interests in the Al Hambra; (2) whether petitioenrs are entitled to rental depreciation deductions during the year in issue on their Al Hambra condominium units; *635 (3) whether petitioners in docket No. 30046-89 are liable for the addition to tax under section 6651(a)(1); (4) whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2); (5) whether petitioners are liable for additions to tax under section 6661 for substantially understating their income taxes for the year in issue; and (6) whether petitioners in docket No. 30046-89 are liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner in docket No. 25529-89 resided in Hillsboro Beach, Florida, at the time his petition was filed. Petitioners in docket No. 30046-89 resided in Coral Gables, Florida, at the time their petition was filed. On March 23, 1984, petitioner James B. Stinnett (Mr. Stinnett) entered into a real estate contract with Peachtree Associates, Ltd. (PAL), a Georgia limited partnership, to purchase from PAL two condominium units in the Al Hambra. Petitioner Salvatore S. Satullo (Mr. Satullo) entered into a similar contract with PAL on March 26, 1984. PAL did not own *636 the Al Hambra at the time it entered into these contracts, but it subsequently acquired the property. After acquiring the Al Hambra, PAL set out to secure financing to fund the building's renovation. On August 14, 1984, PAL and TCF National Properties, Inc. (TCF) entered into an agreement by the terms of which PAL borrowed $ 6,000,000 from TCF to finance the Al Hambra renovation construction. The debt instrument was filed and recorded in the Clerk's Office of the Superior Court of Fulton County, Georgia, on August 20, 1984. Petitioners intended to close their Al Hambra condominium purchases by December 31, 1984. However, as that date drew near, it became clear that petitioners would be unable to obtain timely bank financing. To help petitioners achieve their goal of closing their Al Hambra condominium purchases by December 31, 1984, PAL allowed petitioners to finance their purchases by requiring them to pay $ 16,000 per unit in cash as earnest money, and by having them assume pro rata shares of the construction debt PAL owed to TCF to cover the remaining amount of their purchase costs. PAL determined petitioners' pro rata shares of the assumed debt through a formula based on *637 the relationship between the purchase price of each of petitioners' units and the overall construction debt. Their assumption of PAL's TCF debt was intended only as an interim financing arrangement. Ultimately petitioners were expected to finance their purchases with customary bank financing, which they later obtained. Petitioners signed settlement statements and received warranty deeds from PAL for their respective Al Hambra units in late December 1984. Mr. Satullo purchased Al Hambra units 205 and 309, and Mr. Stinnett purchased Al Hambra units 203 and 315. Mr. Satullo obtained permanent financing for each of his Al Hambra units in December 1985. Mr. Stinnett obtained permanent financing for unit 203 in December 1985, and for unit 315 in January 1986. Petitioners obtained their permanent financing from Home Federal Savings and Loan of Rome, Georgia (Home Federal). On January 15, 1986, petitioners' units were released from TCF's construction mortgage. On January 21, 1986, Home Federal recorded its first mortgages on petitioners' units. Petitioners purchased their Al Hambra units for rental and investment purposes. However, at the time they closed their purchases in December *638 1984, each unit was undergoing extensive rehabilitation construction, and none of the units were suitable for residential occupancy. Certificates of Occupancy were issued for petitioners' Al Hambra units on the following dates: Unit No.
Date
203
January 10, 1986
205
November 27, 1985
309
December 31, 1985
315
January 10, 1986
Petitioners' units were first occupied sometime in 1986, and, accordingly, they received no rental income from their units nor incurred any expenses associated with the rental of their units during the taxable year 1985. The Declaration of Condominium (Declaration) establishing the Al Hambra as a condominium building was executed on November 12, 1985, and recorded on November 15, 1985. Under article VII, paragraph 7.5 of the Declaration, the Board of Directors of the Al Hambra Condominium Owners Association, Inc. (Condo Association) was authorized to grant a facade easement affecting the Al Hambra structure for the purposes of preserving and maintaining the appearance of the Al Hambra's exterior pursuant to the terms of Georgia's Conservation Easement Act of 1976. The Condo Association was entitled to act on behalf of all Al Hambra unit holders *639 in granting such an easement, but Paragraph 7.5 specified that such an easement could be granted only after December 31, 1985. However, despite this restriction, the Condo Association granted such an easement (Al Hambra Easement) to Easements Atlanta, Inc. (EAI), a Georgia nonprofit corporation during December 1985. EAI was established in the early 1980s for the purpose of accepting easements on properties it considered to be architecturally significant to Atlanta. The Condo Association granted the Al Hambra Easement to EAI through a DEED OF GIFT AND AGREEMENT FOR AN ARCHITECTURAL, FACADE AND PRESERVATION EASEMENT (Deed of Gift). The Deed of Gift was signed by representatives of EAI and the Condo Association on December 30, 1985, and its terms provided that the conveyance was intended to be made effective as of December 27, 1985. The Deed of Gift was recorded on January 19, 1988. Prior to accepting the Al Hambra Easement, EAI requested the Condo Association to obtain from all lien holders of the Al Hambra subordination agreements executed in favor of EAI. EAI accepted the Al Hambra Easement without receiving subordination agreements but hoped to obtain them at a later date. *640 In fact, EAI never received such subordination agreements. EAI sought subordination agreements as a matter of policy to avoid losing accepted easements in foreclosure proceedings brought by lienholders. Of the 21 or 22 easements accepted by EAI from owners of various buildings in Atlanta, eight or nine have been lost through foreclosure proceedings. On their Federal income tax returns filed for the year in issue, petitioners claimed deductions for charitable contributions under section 170(f)(3)(B)(iii) (authorizing a deduction for any "qualified conservation contribution") made in the form of their interests in the Al Hambra Easement, and also for rental depreciation on each of their units. Respondent disallowed each of these deductions in their entirety. The 1985 tax return of petitioners at docket No. 30046-89 was untimely filed on October 27, 1986. OPINION Petitioners bear the burden of proving their entitlement to their claimed deductions in issue in these cases. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). 1. Claimed Charitable Contribution Deductions
We first address the question of whether petitioners are entitled *641 to charitable contribution deductions for granting an easement over the facades of their respective interests in the Al Hambra. Respondent argues that petitioners are not entitled to their claimed charitable contribution deductions on several alternative grounds. Respondent contends: (1) That petitioners did not acquire their units during the year in issue but rather acquired them in 1986; (2) that the Condo Association was not authorized to grant a conservation easement during 1985; and (3) that the Al Hambra easement is not a "qualified conservation contribution" as that term is defined by section 170(h). In response, petitioners claim: (1) That ownership of their units was obtained in 1984, as evidenced by warranty deeds received in December of that year; (2) that petitioners and all other unit owners expressly authorized the Condo Association to grant the Al Hambra Easement during the year in issue; and (3) that the Al Hambra Easement satisfies the requisites of section 170(h) and therefore must be considered a qualified conservation contribution. We agree with respondent that petitioners are not entitled to their claimed charitable contribution deductions for their respective *642 interests in the Al Hambra Easement. We conclude that the Al Hambra Easement is not a "qualified conservation contribution", as that term is defined by section 170(h). In reaching this conclusion, we assume without deciding that petitioners, in fact, owned their units during the year in issue and that the Condo Association was authorized to grant the Al Hambra Easement to EAI during 1985. Section 170(a) allows as a deduction any charitable contribution made during the taxable year, including "qualified conservation contributions" under section 170(f)(3)(B)(iii). A qualified conservation contribution is a "contribution of a qualified real property interest" to a "qualified organization", made "exclusively for conservation purposes". Sec. 170(h)(1); sec. 1.170A-14(a), Income Tax Regs.
Petitioners contend that the Al Hambra Easement conveyed to EAI is a qualified conservation contribution. Respondent concedes that EAI is a "qualified organization", but otherwise argues that the Al Hambra Easement conveyance fails to satisfy the requisites of section 170(h). One of respondent's principal arguments is that the Al Hambra Easement was not a qualified conservation contribution because *643 it was not contributed "exclusively" for conservation purposes. We agree with respondent on this issue, and for purposes of addressing this argument, and in reaching our conclusion we assume without deciding that the Al Hambra Easement was a "qualified real property interest" and that the contribution to EAI was made "for conservation purposes". In order for a contribution to be considered a "qualified conservation contribution", the contribution must be made exclusively for conservation purposes. Sec. 170(h)(1)(C). A contribution will not be considered made exclusively for conservation purposes unless the conservation purpose is protected in perpetuity. Sec. 170(h)(5)(A); sec. 1.170A-14(g), Income Tax Regs.
Section 1.170A-14(g), Income Tax Regs., provides the following specifics relevant to this case regarding whether a contribution is protected in perpetuity: (1) In General. In the case of any donation under this section, any interest in the property retained by the donor (and the donor's successors in interest) must be subject to legally enforceable restrictions (for example, by recordation in the land records of the jurisdiction in which the property is located *644 ) that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation. * * * [Emphasis added.] (2) Protection of a conservation purpose in case of donation of property subject to a mortgage. In the case of conservation contributions made after February 13, 1986, no deduction will be permitted under this section for an interest in property which is subject to a mortgage unless the mortgagee subordinates its rights in the property to the right of the qualified organization to enforce the conservation purposes of the gift in perpetuity. For conservation contributions made prior to February 14, 1986, the requirement of section 170(h)(5)(A) is satisfied in the case of mortgaged property (with respect to which the mortgagee has not subordinated its rights) only if the donor can demonstrate that the conservation purpose is protected in perpetuity without subordination of the mortgagee's rights. [Emphasis added.] (3) Remote future event. A deduction shall not be disallowed under section 170(f)(3)(B)(iii) and this section merely because the interest which passes to, or is vested in, the donee organization may be defeated by the performance *645 of some act or the happening of some event, if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible. * * *
Petitioners contend that the Al Hambra Easement is clearly protected in perpetuity from Al Hambra lienholders, arguing that in December 1985 the Deed of Gift established under Georgia law an easement in perpetuity restricting the exterior use of the Al Hambra, and that the easement stands in priority to all existing security interests held by Al Hambra lienholders. Respondent argues the easement is not protected in perpetuity because the Deed of Gift was not recorded pursuant to Georgia law until after Home Federal recorded its security interests in the Al Hambra, which gives Home Federal a priority interest over the easement. We agree with respondent. Essentially, in order to establish that the Al Hambra Easement is protected in perpetuity, petitioners must show that the Deed of Gift conveyed a property interest to EAI which had a priority over Home Federal's mortgage. Sec. 1.170A-14(g)(1) and (2), Income Tax Regs.
Petitioners are unable to make this showing because Georgia law clearly provides that *646 until an easement is recorded its intended property restrictions are legally unenforceable. Ga. Code Ann. Sec. 44-10-3(a) (Michie 1993 Supp.). Specifically, Ga. Code Ann. Sec. 44-10-3(b) provides that: No right or duty in favor of or against a holder and no right in favor of a person having a third-party right of enforcement arises under a conservation easement before its acceptance by the holder and a recordation of the acceptance.
Accordingly, although the Deed of Gift created an easement that was accepted by EAI during December 1985, its terms were not enforceable as required by sec. 1.170A-14(g)(1), Income Tax Regs., until January 19, 1988, when it was recorded. As such, Home Federal's security interest in the Al Hambra stands in priority to the Al Hambra Easement under Georgia law because it was recorded prior in time on January 21, 1986. Examining these conclusions reached under Georgia law, it is clear that petitioners cannot demonstrate that the Al Hambra Easement is protected in perpetuity without subordination of Home Federal's mortgagee rights, as required by section 1.170A-14(g)(2), Income Tax Regs. This conclusion is further supported by focusing on the *647 large percentage of easements EAI has lost in foreclosure proceedings where mortgagees did not execute subordination agreements. It is undisputed in these cases that of the 21 or 22 easements EAI has accepted since its incorporation, eight or nine have been lost in foreclosure proceedings to priority lienholders that had not subordinated their security interests in the properties to the right of EAI to enforce the easements' terms. Pared down to percentages, the record shows that EAI has lost in foreclosure proceedings between 38 and 45 percent of its accepted easements. EAI's high percentage of lost easements underscores the emphasis sec. 1.170A-14(g)(2), Income Tax Regs., places on subordination agreements as a means of assuring that easements on mortgaged property are protected in perpetuity. Still, section 1.170A-14(g)(3), Income Tax Regs., provides that a deduction for an easement will not be disallowed if on the date of the easement donation it appears that the possibility that the easement may be defeated by the performance of some act or happening of some event is "so remote as to be negligible". The regulations offer no specific guidance for determining whether a possibility *648 of occurrence is so remote as to be negligible, but we need not strive to set forth detailed standards in this opinion in order to resolve this issue in the instant cases. Suffice it to say that based upon the fact that EAI has lost between 38 and 45 percent of its accepted easements in foreclosure proceedings, as well as our prior conclusions in this opinion that the Al Hambra Easement's restrictions were unenforceable until January 19, 1988, and that the Al Hambra Easement does not stand in priority to Home Federal's security interest, we consider the possibility that EAI may lose the Al Hambra Easement in a foreclosure proceeding to be far from "so remote as to be negligible". In any event, petitioners bear the burden of proving that they are entitled to relief under section 1.170A-14(g)(3), Income Tax Regs., and in these cases they have not set forth any facts showing that the possibility of foreclosure of the Al Hambra Easement is so remote as to be negligible. As a result of the foregoing analysis, we conclude that petitioners are unable to meet their burden of proving that the Al Hambra Easement is protected in perpetuity as required by section 170(h)(5)(A) and the regulations *649 thereunder, and therefore we further conclude that the Al Hambra Easement contribution was not made "exclusively" for conservation purposes as required by section 170(h)(1)(C). It follows that the Al Hambra Easement conveyed to EAI was not a qualified conservation contribution as defined by section 170(h). Accordingly, we hold that petitioners are not entitled to their claimed charitable contribution deductions under section 170(f)(3)(B)(iii) during the year in issue. [1]
2. Claimed Rental Depreciation Deductions
We next address whether petitioners are entitled *650 to their claimed deductions for rental depreciation on each of their Al Hambra units. Respondent argues that petitioners are not entitled to any such deductions because they have failed to prove ownership of their units during the year in issue, and also because, ownership notwithstanding, they have failed to prove that the units were placed in service prior to or during the year in issue. We agree with respondent on this issue, and hold that petitioners are not entitled to their claimed deductions for rental depreciation on their Al Hambra units for the year in issue. This is based on our conclusion that petitioners failed to prove that their units were placed in service prior to or during the year in issue. For purposes of addressing this issue, we assume without deciding that petitioners in fact owned their units for tax purposes during the taxable year 1985. Section 167(a) allows taxpayers a depreciation deduction for the exhaustion, wear and tear of property used in a trade or business or held for the production of income. Property becomes depreciable beginning when it is "placed in service". Piggly Wiggly Southern, Inc., v. Commissioner, 84 T.C. 739, 745 (1985), *651 affd. on another issue 803 F.2d 1572 (11th Cir. 1986); Clemente v. Commissioner, T.C. Memo. 1985-367; sec. 1.167(a)-10(b), Income Tax Regs. Property is considered "placed in service" when it is ready and available for a specifically assigned function. Piggly Wiggly Southern, Inc., v. Commissioner, supra; Williams v. Commissioner, T.C. Memo. 1987-308; sec. 1.167(a)-11(e)(1)(i), Income Tax Regs.
In support of their position that the Al Hambra was ready and available for rental in December 1984, petitioners rely on: (1) Testimony by Mr. Stinnett and the general contractor in charge of the Al Hambra renovation that the entire building was virtually completed and ready for occupancy in December 1984; (2) a Temporary Certificate of Occupancy (TCO) issued by the City of Atlanta indicating that certain parts of the Al Hambra were inspected and found to be safe for occupancy on December 31, 1984; and (3) an advertisement placed in an Atlanta newspaper dated December 30, 1984, indicating that the Al Hambra was accepting lease applications for December occupancy. In *652 our view this evidence is inconsistent with the weight of the record and insufficient to satisfy petitioners' burden of proof on this issue. The general contractor in charge of the Al Hambra renovation was Mr. Stanley Sekulow (Mr. Sekulow), who is the father of one of PAL's general partners. At trial, Mr. Sekulow testified that in December 1984 the entire Al Hambra renovation was "almost totally completed" with "just the finishing touches" remaining over the whole building. Mr. Sekulow insisted that the remaining work was nothing more than minor details, and certainly was "nothing that would affect the occupancy of the building." Some of the finishing touches Mr. Sekulow referred to included the repainting of some hallways, the laying of carpet in some areas, and perhaps the painting of individual units. Mr. Sekulow indicated that it was a common practice not to paint any unit until it was leased, and that "if you wanted to move in the next day, that unit would be painted." However, despite petitioners' posturing, we are not persuaded by Mr. Sekulow's testimony and in fact find it to be less than credible. We discount Mr. Sekulow's testimony based on compelling evidence received *653 at trial from officials of the State of Georgia Department of Natural Resources and the U.S.Natural Park Service indicating that as late as May 1985, the Al Hambra was a largely gutted property, devoid of intact walls in some places, and completely lacking a roof in others. Aside from testimony, this view was supported at trial by the presentation of photographic slides taken between March 7, 1985, and April 12, 1985, showing the Al Hambra in a general state of substantial renovation. Many of the photographic slides showed tattered or missing walls, hallways with uncovered piping, staircases and railings under construction, and unquestionably, large swaths of the building without any roof covering. Notwithstanding Mr. Sekulow's testimony that only finishing touches were required to complete the Al Hambra in December 1984, it is obvious that a potential lessee entering the building during that period would have been concerned with far more than selecting the proper color of his living room walls. Petitioners argue that the photographic slides presented by respondent's witness showed only a portion of the Al Hambra, and contend that their units in fact exist in a different section *654 of the building where construction was completed consistent with Mr. Sekulow's testimony. In making this argument, petitioners concede that, even if their contentions are true, Mr. Sekulow's testimony that the entire building was essentially completed in December 1984 clearly conflicts with the objective photographic slides. Nonetheless, in order to provide petitioners the opportunity to show that their units were located in an essentially completed portion of the Al Hambra in December 1984, we granted their motion to hold the record open for the introduction of supportive photographs or photographic slides. Petitioners have not produced any such photographs or photographic slides, and from their lack of action we infer that such evidence does not exist. [2]Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1987). *655 Moreover, we disagree with petitioners' contention that the TCO is dispositive proof that their units were ready and available for rent in December 1984. Rather, we find the TCO to be a confusing document with little probative value in these cases. Although the TCO does seem to certify portions of the Al Hambra for occupancy as of December 31, 1984, it neither specifies to our satisfaction the areas of the Al Hambra which are deemed habitable, nor shows that it in fact applied to petitioners' units. Further, the TCO was limited by its terms to a duration of 5 months, and petitioners failed to provide any evidence to account for the rental status of their units from the date of the expiration of the TCO until the end of 1985, the year in issue. In addition, we are not persuaded that petitioners' units were ready and available for rental use in December 1984, by the mere existence of an advertisement that ran in an Atlanta newspaper on December 30, 1984, declaring that the Al Hambra was "ready for December occupancy". The record in these cases clearly shows that not all units were available for rental at that time, and even assuming that some Al Hambra units were so available, *656 a general advertisement does not itself establish the availability of petitioners' particular units. Moreover, the record contains no evidence that petitioners attempted to rent their units during 1985, the taxable year in issue, or that they even treated their units as being available. During the year in issue petitioners paid no advertising expenses, paid no monthly maintenance fees, and incurred no expenses for insurance or even real estate taxes. Absent some other form of corroborating evidence besides the discredited testimony we addressed previously in this opinion, we can only conclude from the record in these cases that petitioners failed to meet their burden of proving that their units were ready and available for rental use prior to and during the year in issue. It follows that petitioners are not entitled to their claimed deductions for depreciation on their units for the taxable year 1985, and we so hold. 3. Section 6651(a)(1) Addition to Tax
We next consider whether petitioners in docket No. 30046-89 are liable for an addition to tax under section 6651(a)(1) for failure to file a timely return. Section 6651(a)(1) imposes an addition to tax where a taxpayer *657 fails to file a return on the date prescribed (determined with regard to any extension for filing), unless it is shown that such failure to file is due to reasonable cause and not due to willful neglect. Petitioners James B. and Donna F. Stinnett (Mr. and Mrs. Stinnett) bear the burden of proving that they exercised "ordinary business care and prudence" in attempting to file a timely return for the taxable year 1985. United States v. Boyle, 469 U.S. 241, 243 (1985). On this record, we conclude that Mr. and Mrs. Stinnett failed to exercise due care and prudence in the filing of their return for the year in issue, and we hold that they are liable for the determined section 6651(a)(1) addition to tax. They introduced no evidence indicating anything other than that they were in possession of all relevant records and documents necessary to complete and timely file their return for taxable year 1985, and that they simply chose to do otherwise. Such behavior stands in complete contrast to the exercise of "ordinary business care and prudence". 4. Section 6653(a)(1) and (2) Additions to Tax
Since we find that Mr. and Mrs. Stinnett failed to exercise *658 due care and prudence in the filing of their return for the year in issue, we hold that they also are liable for the determined additions to tax for negligence under section 6653(a). Emmons v. Commissioner, 92 T.C. 342 (1989), affd. 898 F.2d 50 (5th Cir. 1990). We next address whether Mr. Satullo is liable for the determined additions to tax for negligence under section 6653(a). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Crocker v. Commissioner, 92 T.C. 899, 916 (1989). Respondent concedes that she bears the burden of proof on this issue in Mr. Satullo's case because the issue was raised *659 in an amendment to answer. Mr. Satullo's case was brought to trial to contest respondent's determinations that he was not entitled to either his claimed charitable contribution deduction for donating an interest in the Al Hambra Easement to EAI, or his claimed deductions for rental depreciation on his Al Hambra units. After due consideration, we sustained both of respondent's determinations. In sustaining respondent's determination regarding Mr. Satullo's charitable contribution deduction, this case turned on application of a complicated rule prescribed by section 170(h)(5)(A) and section 1.170A-14(g), Income Tax Regs., to the facts of this case. Although we have not ruled in Mr. Satullo's favor on this substantive issue, we conclude that it was due to reasonable error on his behalf in interpreting the law, and not the result of negligence. We resolved this issue on a narrow legal ground. Consequently, we do not think application of the additions to tax for negligence is warranted on the basis of our conclusion on this issue. In contrast, we conclude that application of the additions to tax for negligence is warranted in this case based on our conclusions regarding Mr. Satullo's *660 claimed deductions for rental depreciation. Respondent prevailed on the substance of this issue because the evidence presented supporting her position was credible and compelling, whereas petitioners, in arguing that their Al Hambra units were placed in service in December 1984, and remained in service during the year in issue, produced either no evidence, or evidence completely lacking in credibility. On this record, we conclude that respondent has shown that Mr. Satullo's claimed rental depreciation deductions were not based on an honest and reasonable belief that such amounts were properly deductible. Accordingly, we think respondent has satisfied her burden of proof, and we hold that Mr. Satullo is liable for additions to tax under section 6653(a). Since we conclude that Mr. Satullo was negligent in claiming deductions for rental depreciation, it is clear that he is liable for the addition to tax for negligence under section 6653(a)(1) in the full amount determined by respondent in the notice of deficiency (since some part of the underpayment of tax in this case is due to negligence). However, since we concluded that Mr. Satullo was negligent only in claiming his deductions *661 for rental depreciation, it is clear that he is liable for the addition to tax for negligence under section 6653(a)(2) only to the extent that the underpayment in this case stems from the disallowance of those deductions (since only that portion of the underpayment is attributable to negligence). 5. Section 6661 Additions to Tax
We next address whether petitioners are liable for additions to tax under section 6661. Section 6661 imposes an addition to tax equal to 25 percent of any underpayment of income tax attributable to a substantial understatement. An understatement is defined as the excess of the amount of tax required to be shown on the tax return over the amount of tax actually shown on the tax return as filed, minus any rebates. Sec. 6661(b)(2)(A). A substantial understatement is one that exceeds the greater of either 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). The amount of the understatement may be reduced by an amount for which there was substantial authority for the treatment adopted by the taxpayer on his return or by an adequate disclosure in the return, or in a statement attached to the return of the relevant *662 facts affecting the tax treatment of the disputed items. Sec. 6661(b)(2)(B)(i). Respondent concedes that she bears the burden of proof on this issue in docket No. 25529-89 because it was raised in an amendment to answer. On the basis of the record in these cases and our prior conclusions in this opinion, we conclude that petitioners are liable for the additions to tax under section 6661 to the extent that the amounts of the understatements resulting from their claimed deductions for rental depreciation are each considered a "substantial understatement" pursuant to section 6661(b)(1). While petitioners were unable to prove that the Al Hambra Easement was protected in perpetuity, we think they had substantial authority for their position on this issue, warranting reductions in the amounts of the understatements for purposes of application of section 6661. However, based on the scant credible evidence in the record in support of petitioners' claimed rental depreciation deductions in comparison to the clear, objective, and weighty evidence indicating that such deductions were not supportable under the Internal Revenue Code, applicable regulations, and relevant case law, we conclude *663 that in claiming these deductions petitioners did not have substantial authority for their position. Petitioners do not argue that they adequately disclosed their position on their returns or in attached statements. Accordingly, we hold that petitioners are liable for the additions to tax under section 6661 if the Rule 155 computations that will result from this opinion show that a "substantial understatement" exists in these cases. In reaching this holding we conclude that respondent has satisfied her burden of proof on this issue in docket No. 25529-89. 6. Section 6621(c) Increased Interest
Finally, we consider whether petitioners in docket No. 30046-89 are liable for increased interest under section 6621(c). Section 6621(c) provides for an interest rate of 120 percent of the rate established under section 6621 if there is a "substantial underpayment" (an underpayment exceeding $ 1,000) in any taxable year attributable to one or more "tax motivated transactions". Section 6621(c) applies only to specific tax-motivated transactions detailed in section 6621(c)(3). In this opinion we did not deny either of the deductions in issue on any grounds specified in section 6621(c). *664 Accordingly, section 6621(c) is inapplicable in this case, and petitioners are not liable for increased interest. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. 50 percent of the interest on $ 177,083.↩
1. Since we resolve this issue on the ground that the easement donation to EAI was not a qualified conservation contribution because the contribution was not made "exclusively" for conservation purposes, we do not address respondent's further arguments that the Al Hambra Easement in fact was not a "qualified real property interest" as defined by section 170(h)(2), and in fact was not contributed "for conservation purposes" as defined by section 170(h)(4)↩.
2. Following our analysis of Mr. Sekulow's testimony in this case, we also find Mr. Stinnett's testimony that the Al Hambra renovation was "80 to 85 percent completed" in December 1984, lacking in credibility, and accordingly, are not persuaded by this self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74↩ (1986).